**FITZGERALD JOSEPH LLP**
JACK FITZGERALD (SBN 257370)
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH (SBN 287057)
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER (SBN 275423)
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN (SBN 253362)
*trevor@fitzgeraldjoseph.com*
CAROLINE S. EMHARDT (SBN 321222)
*caroline@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GUMNER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEPSICO, INC.,<br><br>Defendant. | Case No: 8:23-cv-00332<br><br><u>CLASS ACTION</u><br><br>**COMPLAINT FOR VIOLATIONS OF CAL. BUS. & PROF. CODE §§ 17200 *et seq*. and UNJUST ENRICHMENT**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff David Gumner, on behalf of himself, all others similarly situated, and the general public, by and through his undersigned counsel, hereby sues Defendant PepsiCo, Inc. ("Pepsi"), and alleges the following upon his own knowledge, or where he lacks personal knowledge, upon information and belief, including the investigation of his counsel.

## INTRODUCTION

1. Pepsi sells a line of Gatorade "Fit" drinks (the "Products") that it markets and labels as "Real Healthy Hydration" because, *inter alia*, it has "No Added Sugar" and is an "Excellent Source of Vitamin A & C."

2. But Pepsi's use of these claims renders the Gatorade Fit products misbranded because they do not meet the specific requirements necessary to make these claims.

3. Plaintiff bought Gatorade Fit in reliance on these claims and was economically injured.

4. Plaintiff brings this action against Pepsi on behalf of himself and similarly-situated Class Members to enjoin Pepsi from unlawfully marketing Gatorade Fit, and to recover compensation for injured Class Members.

## JURISDICTION & VENUE

5. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and at least one member of the class of plaintiffs is a citizen of a State different from Pepsi.

6. The Court has personal jurisdiction over Pepsi because it has purposely availed itself of the benefits and privileges of conducting business activities within California, specifically through distributing and selling the Gatorade Fit drinks at issue in California and transactions giving rise to this action occurring in California.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) and (c), because Pepsi resides (*i.e.*, is subject to personal jurisdiction) in this district, and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## PARTIES

8. Plaintiff David Gumner is a resident and citizen of Orange County, California.

9. Defendant Pepsi, Inc. is a North Carolina corporation with its principal place of business in New York.

## FACTS

### I. PEPSI MARKETS GATORADE FIT WITH UNAUTHORIZED NUTRIENT CONTENT CLAIMS THAT RENDER IT MISBRANDED

10. Pepsi is an international conglomerate with a net operating revenue of nearly $80 billion in 2021.

11. Pepsi owns the Gatorade brand and sells Gatorade Fit on a nationwide basis, including in California.

12. Gatorade Fit products are sold in several flavors including at least: Tropical Mango, Citrus Berry, Watermelon Strawberry, Cherry Lime, and Tangerine Orange.[1]

---

[1] To the extent, Gatorade Fit is sold in other flavors, the complaint should be read to include rather than exclude such flavors.



13. Gatorade Fit is essentially water that is flavored with a small amount of watermelon juice concentrate and citric acid and sweetened with stevia leaf extract.

14. Pepsi also adds electrolytes and fortifies Gatorade Fit with Ascorbic Acid (vitamin C), Niacinamide (Vitamin B3), Beta Carotene (Vitamin A), Calcium Pantothenate (Vitamin B5), and Pyridoxine Hydrochloride (Vitamin B6).

15. Pepsi fortifies Gatorade Fit such that 500 milliliters (16.9 fl. oz.) of any Gatorade Fit Product contains 100% of the FDA's daily recommended value of each of these vitamins.

16. Absent fortification, no Gatorade Fit variety would provide 10% or more vitamin A or C, and none are a significant source of calcium, iron, protein or fiber either.

   



17. All flavors of Gatorade Fit bear the statement "Healthy Real Hydration" on the front of the label, directly under which the phrases "No Added Sugar" and "Excellent Source of Vitamin A & C" appear.

18. On the opposite side of the label, Gatorade Fit likewise bears the statement "Healthy Real Hydration," directly above the statements "No Added Sugar" and "Excellent Source of Antioxidant Vitamin A & C."[2]

---

[2] Collectively, the statements listed in paragraphs 17 and 18 are referred to as the "Misbranded Claims."

19. Exemplars of a 16.9 fluid ounce Tropical Mango label are shown below.



20. The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*. ("FDCA" of "Act") empowers the FDA to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," *id*. § 393(b)(2)(A). The Act prohibits the distribution and sale of misbranded foods. *Id*. §§ 331(a)-(c), (g), (k).

21. Foods are misbranded when they meet one of the definitions for misbranding under § 343, including where their labels make nutrient content claims in violation of the Act and its implementing regulations, *see id*. § 343(r); 21 C.F.R. §§ 101.13(b), 101.65.

22. The California Health and Safety Code §§ 109875, *et. seq*. (the "Sherman Law") has expressly adopted the federal food labeling requirements for nutrient content claims as its own. *See*, *e.g*., *id*. § 110100; *id*. § 110670 ("Any food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in Section 403(r) (21 U.S.C. Sec. 343(r)) of the federal act and the regulation adopted pursuant thereto.").

23. The general rule is that nutrient content claims are not permitted on food labels. Instead, nutrient content claims are only permitted when a claim is defined by regulation and the requirements for making the claim are met. *See Reid v. Johnson & Johnson*, 780 F.3d 952, 959 (9th Cir. 2015); 21 U.S.C. § 343(r).

24. As laid out below, the Gatorade Fit products are misbranded because they bear nutrient content claims, but they are not made in accordance with the requirements for making those claims.

25. The Gatorade Fit products bear the claims "Healthy Real Hydration" directly above the phrases "No Added Sugar" and "Excellent Source of [Antioxidant] Vitamin A & C."[3]

26. The use of these claims are governed by 21 C.F.R. § 101.65(d), because "Real Healthy Hydration" "[s]uggest[s] that a food because of its nutrient content may help consumers maintain healthy dietary practices," *id*. § 101.65(d)(1)(i), and it is "made in

---

[3] The statements "No Added Sugar," "Excellent Source of Vitamin A & C," and "Excellent Source of Antioxidant Vitamin A & C," are all nutrient content claims because they state or imply the level of a nutrient using defined terms. *See* 21 C.F.R. § 101.13(b).

1 connection with an explicit or implicit claim or statement about a nutrient," *id.* §
2 101.65(d)(1)(2), namely the statements "No Added Sugar" and "Excellent Source of
3 [Antioxidant] Vitamin A & C."

27. Because "Healthy Real Hydration" uses the term "healthy," it must meet the requirements of 21 C.F.R. § 101.65(d)(2), which provides that manufacturers "may use the term 'healthy' . . . as an implied nutrient content claim on the label or in labeling of a food that is useful in creating a diet that is consistent with dietary recommendations if" the requirements of 21 C.F.R. § 101.65(d)(2)(i)-(iv) are satisfied.

28. Relevant here, the Gatorade Fit products fail to meet the requirements of sections 101.65(d)(2)(i) and (iv).

29. The relevant portion of section 101.65(d)(2)(i) is subsection (F),[4] which provides that the food must contain "[a]t least 10 percent of the RDI or the DRV per RA of one or more of vitamin A, vitamin C, calcium, iron, protein or fiber." *Id.* § 101.65(d)(2)(i)(F).

30. The relevant portion of section 101.65(d)(2)(iv) provides that "[i]f you add a nutrient to the food specified in paragraph[] . . . (d)(2)(i)(F) of this section to meet the 10 percent requirement, that addition must be in accordance with the fortification policy for foods in § 104.20 of this chapter." *Id.* § 101.65(d)(2)(iv).

31. None of the Gatorade Fit products meet the 10 percent requirement without fortification and thus must comply with the fortification policy.

32. Under the fortification policy, 21 C.F.R. § 104.20, fortification is permitted in only four circumstances: (1) "to correct a dietary insufficiency recognized by the scientific community," (2) "to restore such nutrient(s) to a level(s) representative of the food prior to

---

[4] Subsection (F) applies to the Gatorade Fit Products because this subsection applies to any "food not specifically listed in this table," and the Gatorade Fit products are not listed or otherwise captured in any of the other subsections, (A) through (E), of the table. *See* 21 C.F.R. §§ 101.65(d)(2)(i)(A) ("A raw fruit or vegetable"), (B) ("A single-ingredient or a mixture of frozen or canned fruits and vegetables"), (C) ("An enriched cereal-grain product . . ."), (D) ("A raw, single-ingredient seafood or game meat"), (E) ("A meal product as defined in § 101.13(l) or a main dish product as defined in § 101.13(m)").

storage, handling and processing," (3) "to avoid nutritional inferiority" when replacing a traditional food, and (4) "in proportion to the total caloric content . . . to balance the vitamin, mineral, and protein content . . . ." *Id.* §§ 104.20(b)-(e).

33. The Gatorade Fit products do not qualify for fortification with vitamin A or C under any of these for circumstances.

34. The first basis for fortification, "*to correct* a dietary insufficiency recognized by the scientific community," *id.* § 104.20(b) (emphasis added), does not apply because vitamin A and vitamin C deficiencies are extremely rare. The Scientific Report of the 2020 Dietary Guidelines Advisory Committee concluded that the underconsumption of vitamins A and C "do not appear to pose a public health concern, given the present lack of adverse clinical and health outcome data . . . ." Likewise, the Centers for Disease Control and Prevention has also reported that a vitamin A or C deficiency is "rare in the United States."

35. The second basis for fortification (the "restoration principle") does not apply because it allows "[a]ll nutrients . . . that are lost in a measurable amount [during storage, handling, or processing to be] restored," 21 C.F.R. § 104.20(c), but Gatorade Fit is not a product for which nutrients are lost during storage, handling, or processing. Thus, Pepsi cannot avail itself of the restoration principle.

36. The third basis for fortification relates to foods that are fortified to contain 21 specific nutrients, *see id.* § 104.20(d)(3)), and so does not apply to Gatorade Fit products because the Products were not fortified to contain all 21 nutrients in the appropriate amount.

37. Finally, Pepsi cannot rely on the fourth basis for fortification—avoiding nutritional inferiority when replacing a traditional food, *id.* § 104.20(e)—because the Gatorade Fit products do not replace a traditional food.

38. Because fortification of the Gatorade Fit Products violates the fortification policy and it is only through fortification that the Products meet the 10% requirement, the Products are misbranded.

## II.   PLAINTIFF'S PURCHASE, RELIANCE, AND INJURY

39. As best he can recall, Mr. Gumner purchased Gatorade Fit in or around November of 2022 from the Walmart located on Alicia Parkway in Laguna Niguel, California.

40. In purchasing Gatorade Fit, Mr. Gumner was exposed to, read, and relied upon the Misbranded Claims listed below:

   a. "Healthy Real Hydration";
   b. "No Added Sugar";
   c. "Excellent Source of Antioxidant Vitamins A & C"; and
   d. "Excellent Source of Vitamins A & C."

41. Plaintiff paid more for Gatorade Fit because of the Misbranded Claims. Plaintiff would not have purchased Gatorade Fit or would only have been willing to pay less, absent the Misbranded Claims.

42. Gatorade Fit cost more than it would have without the Misbranded Claims.

43. By using the Misbranded Claims, Pepsi was able to gain a greater share of the relevant drink market than it would have otherwise and also increased the size of the market.

44. Plaintiff would not have purchased Gatorade Fit if he had known that the Products were misbranded pursuant to California and federal labeling laws and regulations.

45. For these reasons, Gatorade Fit were worth less than what Plaintiff and the Class paid for them, and Plaintiff and the Class lost money as a result of the Misbranded Claims.

46. Plaintiff continues to desire to purchase healthy beverages, and continues to see Gatorade Fit at stores when he shops. He would purchase Gatorade Fit in the future if they were not misbranded, but unless Pepsi is enjoined in the manner Plaintiff requests, he may not be able to reasonably determine whether the Products have been changed or reformulated to conform with FDA regulations.

47. Plaintiff's legal remedies are inadequate to prevent these future injuries.

## CLASS ACTION ALLEGATIONS

48. While reserving the right to redefine or amend the class definition prior to or as part of a motion seeking class certification, pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks to represent all persons in California who, at any time from four years preceding the date of the filing of this Complaint to the time a class is notified (the "Class Period"), purchased, for personal or household use, and not for resale or distribution, any of Gatorade Fit Products (the "Class").

49. The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all Class Members in a single action will provide substantial benefits to the parties and Court.

50. Questions of law and fact common to Plaintiff and the Class include at least:

    a. whether the Gatorade Fit products are misbranded;

    b. the proper amount of restitution;

    c. the proper scope of injunctive relief; and

    d. the proper amount of attorneys' fees.

51. These common questions of law and fact predominate over questions that affect only individual Class Members.

52. Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Pepsi's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same Misbranded Claims and suffered economic injury. Absent Pepsi's business practice of unlawfully labeling Gatorade Fit, Plaintiff and Class Members would not have purchased the Products or would have paid less.

53. Plaintiff will fairly and adequately represent and protect the interests of the Class, has no interests incompatible with the interests of the Class, and has retained counsel competent and experienced in class action litigation, and specifically in litigation involving the misbranding of foods.

54.     Class treatment is superior to other options for resolution of the controversy because the relief sought for each Class Member is small, such that, absent representative litigation, it would be infeasible for Class Members to redress the wrongs done to them.

55.     Pepsi has acted on grounds applicable to the Class, thereby making appropriate final injunctive and declaratory relief concerning the Class as a whole.

56.     As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3).

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*.**

57.     Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

58.     The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

59.     The acts, omissions, misrepresentations, practices, and non-disclosures of Pepsi as alleged herein constitute business acts and practices.

### Unlawful

60.     The acts alleged herein are "unlawful" under the UCL in that they violate at least the following laws and regulations:

- The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301 *et seq*.;
- The Code of Federal Regulations, 21 C.F.R. § 101.13; *id.* § 101.65; *id.* § 104.20; and
- The California Sherman Food, Drug, and Cosmetic Law, Cal. Health & Safety Code §§ 110100 *et seq*.

### Unfair

61.     Pepsi's conduct with respect to the labeling, advertising, and sale of Gatorade Fit was unfair because Pepsi's conduct was immoral, unethical, unscrupulous, or substantially

injurious to consumers, and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

62. Pepsi's conduct with respect to the labeling, advertising, and sale of Gatorade Fit was and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not necessarily limited to portions of the Federal Food, Drug, and Cosmetic Act and portions of the California Sherman Food, Drug, and Cosmetic Law.

63. Pepsi's conduct with respect to the labeling, advertising, and sale of Gatorade Fit was and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided. Specifically, the increase in profits obtained by Pepsi through the Misbranded Claims does not outweigh the harm to Class Members who purchased the misbranded Gatorade Fit products.

64. Pepsi profited from the sale of unlawfully and misbranded Gatorade Fit products to unwary consumers.

65. Plaintiff and Class Members are likely to continue to be damaged by Pepsi's unfair trade practices, because Pepsi continues to use the Misbranded Claims. Thus, injunctive relief enjoining Pepsi's deceptive practices is proper.

66. Pepsi's conduct caused and continues to cause substantial injury to Plaintiff and other Class Members. Plaintiff has suffered injury in fact as a result of Pepsi's unlawful conduct.

67. In accordance with Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Pepsi from continuing to conduct business through unlawful and/or unfair acts and practices.

68. Plaintiff and the Class also seek an order for the restitution of all money from the sale of Gatorade Fit, which was unjustly acquired through acts of unlawful competition.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

69. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if fully set forth herein.

70. Plaintiff and Class Members conferred upon Defendant an economic benefit, in the form of profits resulting from the purchase and sale of the Products.

71. Defendant's financial benefits resulting from its unlawful and inequitable conduct are economically traceable to Plaintiff's and Class Members' purchases of the Products and the economic benefits conferred on Defendant are a direct and proximate result of its unlawful and inequitable conduct.

72. It would be inequitable, unconscionable, and unjust for Pepsi to be permitted to retain these economic benefits because the benefits were procured as a direct and proximate result of its wrongful conduct.

73. As a result, Plaintiff and Class Members are entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits which may have been obtained by Pepsi as a result of such business practices.

### **PRAYER FOR RELIEF**

74. Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for judgment against Pepsi as to each and every cause of action, and the following remedies:

   a. An Order declaring this action to be a proper class action, appointing Plaintiff as Class Representative, and appointing Plaintiff's undersigned counsel as Class Counsel;

   b. An Order requiring Pepsi to bear the cost of Class Notice;

   c. An Order requiring Pepsi to disgorge all monies, revenues, and profits obtained by means of any wrongful act or practice;

d.  An Order requiring Pepsi to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful or unfair business act or practice, plus pre-and post-judgment interest thereon;

e.  An award of attorneys' fees and costs; and

f.  Any other and further relief that Court deems necessary, just, or proper.

## JURY DEMAND

75. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 24, 2023         /s/ Paul K. Joseph

**FITZGERALD JOSEPH LLP**
JACK FITZGERALD
*jack@fitzgeraldjoseph.com*
PAUL K. JOSEPH
*paul@fitzgeraldjoseph.com*
MELANIE PERSINGER
*melanie@fitzgeraldjoseph.com*
TREVOR M. FLYNN
*trevor@fitzgeraldjoseph.com*
2341 Jefferson Street, Suite 200
San Diego, California 92110
Phone: (619) 215-1741

**Counsel for Plaintiff**