ANDREW S. TULUMELLO (SBN #196484)
drew.tulumello@weil.com
CLAIRE L. CHAPLA (SBN #314255)
claire.chapla@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorneys for Defendant PepsiCo, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GUMNER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEPSICO, INC.,<br><br>Defendant. | Case No. 8:23-CV-00332-CJC-KES<br><br>**PEPSICO, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>**Hearing**</u><br>Date: June 26, 2023<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Cormac J. Carney |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on June 26, 2023 at 1:30 p.m. or as soon thereafter as the matter may be heard by the Honorable Cormac J. Carney in Courtroom 9B, located at 411 West Fourth Street, Santa Ana, CA, 92701-4516, Defendant PepsiCo, Inc. ("PepsiCo") will and hereby does move this Court pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing all of Plaintiff's claims against PepsiCo, without leave to amend.

PepsiCo brings this motion on the grounds that Plaintiff's claims are preempted by federal law and Plaintiff fails state a claim for which relief can be granted. *First*, Plaintiff does not plausibly allege that the labeling of PepsiCo's Gatorade Fit sports hydration beverage violates federal law. Plaintiff alleges that Gatorade Fit is mislabeled because it does not comply with a federal policy governing fortification of food and beverage products with added vitamins, but Plaintiff pleads no facts to support the conclusory allegation that the non-binding fortification policy applies to Gatorade Fit. Plaintiff also fails to plausibly plead that fortification with vitamins A and C is unlawful given that the Complaint concedes fortification is permitted to correct a dietary insufficiency, and that according to the source cited in the Complaint, there is a dietary insufficiency of vitamins A and C. Because Plaintiff does not plead these threshold facts, he does not plausibly allege that the labeling of Gatorade Fit violates federal law. Plaintiff's claims for violation of the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL") and for common-law unjust enrichment must therefore be dismissed as preempted and inadequately pled. *Second*, Plaintiff does not plausibly allege that he actually relied on any of the allegedly unlawful labeling in purchasing Gatorade Fit, so his UCL claim further fails for lack of standing. *Third*, Plaintiff seeks purely equitable relief but does not allege that he lacks an adequate remedy at law. *Finally*, even if Plaintiff's claims

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

could otherwise survive, his claim for injunctive relief must be dismissed for lack of Article III standing.

 This motion is based upon this Notice of Motion and the attached Memorandum of Law, and on such other written and oral arguments as may be presented to the Court.  This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 17, 2023.

# **TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................. 1

BACKGROUND .............................................................................. 2

    A.   Factual Allegations ................................................................. 2

    B.   Regulatory Framework ........................................................... 3

LEGAL STANDARD ....................................................................... 5

ARGUMENT .................................................................................... 6

I.   Plaintiff Does Not Plausibly Allege that Gatorade Fit's Labeling
Violates Federal Law ................................................................. 6

    A.   Plaintiff Does Not Plead Any Facts to Support a Regulatory
Violation ............................................................................... 6

        1.   Plaintiff Pleads No Facts to Show the Fortification
Policy Applies .............................................................. 6

        2.   Plaintiff Does Not Plead that Gatorade Fit Does Not
Comply with the Fortification Policy ........................... 9

    B.   Plaintiff's Failure to Plead Facts Supporting the Alleged
Regulatory Violation Requires Dismissal of All of His Claims ......... 11

        1.   Plaintiff's Claims Are Preempted ............................... 11

        2.   Plaintiff Does Not Plausibly Allege that the Products'
Labeling Is "Unlawful" or "Unfair" ........................... 13

        3.   Plaintiff's Unjust Enrichment Claim Based on the Same
Alleged Conduct Must Be Dismissed .......................... 15

II.   Plaintiff Does Not Plead that Reliance on Any Alleged Misstatement
Caused His Alleged Injury ......................................................... 15

III.   Plaintiff Does Not Plead Entitlement to Equitable Relief .............. 17

    A.   Plaintiff Cannot Seek Restitution Because He Does Not (and
Cannot) Allege that He Lacks an Adequate Remedy at Law ............ 17

    B.   Plaintiff Lacks Standing to Seek Injunctive Relief ................. 19

CONCLUSION .............................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Cole Haan, LLC*,
   No. 20-cv-913, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ................................. 18

*Alamilla v. Hain Celestial Grp., Inc.*,
   30 F. Supp. 3d 943 (N.D. Cal. 2014)........................................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)............................................................................. 2, 5

*Barreto v. Westbrae Nat., Inc.*,
   518 F. Supp. 3d 795 (S.D.N.Y. 2021) ............................................................ 8

*Barrett v. Optimum Nutrition, Inc.*,
   No. CV-21-4398-DMG, 2022 WL 3452791 (C.D. Cal. July 18, 2022) ................... 18

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................ 5, 6, 10

*Chong v. Nestle Waters N. Am., Inc.*,
   No. CV-19-10901-DMG-KSX, 2020 WL 7690175
   (C.D. Cal. Nov. 30, 2022)........................................................................ 13

*Clevenger v. Welch Foods Inc.*,
   No. CV-20-01859-CJC-JDE(x), 2022 WL 18228288
   (C.D. Cal. Dec. 14, 2022)........................................................................ 19

*In re Coca-Cola Prods. Mktg. & Sales Pracs. Litig.*,
   No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021)............................. 19, 20

*Cosgrove v. Or. Chai, Inc.*,
   520 F. Supp. 3d 562 (S.D.N.Y. 2021) ............................................................ 8

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000)............................................................................... 5

*Dig. Mktg. Advisors v. McCandless Grp., LLC*,
   No. 2:21-cv-06888-AB-GJS, 2022 WL 18216003
   (C.D. Cal. Mar. 28, 2022)........................................................................ 11

*Drake v. Toyota Motor Corp.*,
   No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125
   (C.D. Cal. Nov. 23, 2020) ............................................................................ 19

*Dvora v. Gen. Mills, Inc.*,
   No. 11-cv-1074-GW, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ................... 3, 13

*Figy v. Amy's Kitchen, Inc.*,
   No. CV-13-03816-SI, 2013 WL 6169503 (N.D. Cal. Nov. 25, 2013) ..................... 16

*Forsher v. J.M. Smucker Co.*,
   612 F. Supp. 3d 714 (N.D. Ohio 2020) ....................................................... 8

*Gershfeld v. Teamviewer US, Inc.*,
   No. 21-cv-00058-CJC, 2021 WL 3046775 (C.D. Cal. June 24, 2021) ..................... 15

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   No. CV-20-00769-CJC-GJS(x), 2020 WL 5492990
   (C.D. Cal. Sept. 9, 2020) ............................................................................ 18

*Gomez v. Jelly Belly Candy Co.*,
   No. CV-17-00575-CJC-FFM(x), 2017 WL 2598551
   (C.D. Cal. June 8, 2017) ...................................................................... 16, 17

*Graham v. Cent. Garden & Pet Co.*,
   No. 22-cv-06507-JSC, 2023 WL 2744391 (N.D. Cal. Mar. 30, 2023) ............... 19, 20

*Great Pac. Sec. v. Barclays Cap., Inc.*,
   743 F. App'x 780 (9th Cir. 2018) ............................................................... 15

*Hoffman v. Kraft Heinz Foods Co.*,
   No. 22-CV-397 (KMK), 2023 WL 1824795 (S.D.N.Y. Feb. 7, 2023) ..................... 8

*Ibarra v. Pharmagenics LLC*,
   No. CV-23-00116-CJC-ADS(x), 2023 WL 2445397
   (C.D. Cal. Mar. 8, 2023) ...................................................................... 17, 18

*Ivie v. Kraft Foods Glob., Inc.*,
   961 F. Supp. 2d 1033 (N.D. Cal. 2013) ....................................................... 5, 11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..................................................................... 14

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017) .................................................................... 14

*Lisner v. Sparc Grp. LLC*,
   No. 2:21-CV-05713-AB, 2021 WL 6284158 (C.D. Cal. Dec. 29, 2021) ................. 17

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund. Inc.*,
   339 F.3d 1087 (9th Cir. 2003) .................................................................... 18

*Myers v. Starbucks Corp.*,
   No. CV-20-00335-CJC(SHKx), 2020 WL 13302437
   (C.D. Cal. July 29, 2020) ......................................................................... 14

*Osborne v. Kraft Foods Grp., Inc.*,
   No. 15-cv-2653-VC (N.D. Cal. Oct. 15, 2015) ............................................... 8

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
   No. 16-cv-1442-PSG, 2017 WL 4676585 (C.D. Cal. Oct. 10, 2017) ...................... 12

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
   No. 16-cv-1442-PSG, 2018 WL 1616053 (C.D. Cal. Mar. 8, 2018) ................. 13, 15

*Reilly v. Apple Inc.*,
   578 F. Supp. 3d 1098 (N.D. Cal. 2022) ................................................... 17, 18

*Robie v. Trader Joe's Co.*,
   No. 20-CV-07355-JSW, 2021 WL 2548960 (N.D. Cal. June 14, 2021) .............. 8, 13

*Santiful v. Wegmans Food Mkts., Inc.*,
   No. 20-CV-2933 (NSR), 2022 WL 268955 (S.D.N.Y. Jan. 28, 2022) ...................... 8

*Shaeffer v. Califia Farms, LLC*,
   44 Cal. App. 5th 1125 (2020) ............................................................... 15, 16

*Shin v. Campbell Soup Co.*,
   No. CV 17-1082-DMG, 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ..................... 16

*Shroyer v. New Cingular Wireless Servs., Inc.*,
   622 F.3d 1035 (9th Cir. 2010) ...................................................................... 6

*Silvas v. E*Trade Mortg. Corp.*,
   514 F.3d 1001 (9th Cir. 2008) ...................................................................... 5

*Smith v. Gen. Mills Sales, Inc.*,
   No. 1:22-cv-01529 (N.D. Ill. Mar. 3, 2023) .................................................... 17

*Steele v. Wegmans Food Mkts., Inc.*,
    472 F. Supp. 3d 47 (S.D.N.Y. 2020) ................................................................ 8

*Svensrud v. Frito-Lay N. Am., Inc.*,
    No. 8:20-cv-0714-JLS-DFM, 2020 WL 8575056
    (C.D. Cal. Dec. 21, 2020) .................................................................. 7, 12, 13

*Wilson v. Frito-Lay N. Am., Inc.*,
    961 F. Supp. 2d 1134 (N.D. Cal. 2013) ...................................................... 15

*Zaback v. Kellogg Sales Co.*,
    No. 3:20-cv-00268-BEN-MSB, 2020 WL 3414656
    (S.D. Cal. June 22, 2020) ................................................................................ 8

**Statutes**

Cal. Health & Safety Code § 109875 ............................................................... 3

Cal. Health & Safety Code § 110100 ............................................................. 12

Cal. Health & Safety Code § 110670 ............................................................. 12

**Regulations**

21 C.F.R. § 101.9 ............................................................................................... 4

21 C.F.R. § 101.12 ............................................................................................. 9

21 C.F.R. § 101.54 ....................................................................................... 5, 14

21 C.F.R. § 101.60 ....................................................................................... 5, 14

21 C.F.R. § 101.65 ......................................................................................... 4, 6

21 C.F.R. § 104.20 ..................................................................... 3, 4, 6, 9, 11, 12

Food & Drug Admin., Food Labeling: Nutrient Content Claims, General
    Principles, Petitions, Definition of Terms; Definitions of Nutrient
    Content Claims for the Fat, Fatty Acid, and Cholesterol Content of
    Food, 58 Fed. Reg. 2302 (Jan. 6, 1993) ...................................................... 4

**Other Authorities**

J. Crook, et al*., Insufficient Vitamin C Levels among Adults in the United States*, 13 Nutrients 3910 (Nov. 2021),
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8625707/ ..................................... 10

J. Lykkesfeldt, *Vitamin C*, 5 Advances in Nutrition 16 (Jan. 2014),
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3884093/ ..................................... 10

C.A. Reider, et al., *Inadequacy of Immune Health Nutrients: Intakes in US Adults, the 2005-2016 NHANE*S. 12 Nutrients 1735 (June 2020),
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7352522/ ..................................... 9

Scientific Report of the 2020 Dietary Guidelines Advisory Committee, Part D, Chapter 1:  Current Intakes of Foods, Beverages, and Nutrients,
https://www.dietaryguidelines.gov/sites/default/files/2020-07/PartD_Ch1_CurrIntakes_first-print.pdf ................................................................ 10

U.S. Food & Drug Admin, *FDA Requests Information on Expansion of the Rarely Consumed Raw List for Uncommonly Consumed Produce* (Aug. 6, 2020), *available at* https://www.fda.gov/food/cfsan-constituent-updates/fda-requests-information-expansion-rarely-consumed-raw-list-uncommonly-consumed-produce .................................................................... 9

1

2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

3     Vitamins are good for you.  That much is obvious—or so one might have thought.

4 The Complaint here takes the unusual position that Gatorade Fit sports hydration

5 beverages are not "healthy" because they contain added vitamins A and C.  Plaintiff does

6 not dispute that Gatorade Fit contains the nutrients that FDA requires for a beverage to

7 be labeled as "healthy," nor does he allege that he was misled by the product labeling in

8 any way—he just believes the vitamins were not added for a permissible purpose.  In the

9 end, this is a case in search of a technical violation of FDA regulations, but without the

10 facts to actually allege one.

11     Plaintiff claims that "Healthy Real Hydration" labeling on Gatorade Fit (the

12 "Products") violates an FDA regulation governing the use of the term "healthy."  That

13 regulation requires a subset of products fortified with added vitamins to comply with an

14 otherwise non-binding FDA policy addressing appropriate purposes of fortification.  But

15 there are two fundamental problems with Plaintiff's theory.

16     *First*, the regulation he claims was violated applies only under limited

17 circumstances:  If the Products contain even ten percent of the recommended daily intake

18 of *either* vitamin A or C from ingredients other than added vitamins, it does not apply.

19 Plaintiff skips right over this critical step.  He does not allege any facts to support his

20 claim that all the vitamin A and C in the Products was added—he simply says it is so.  He

21 does not allege that he (or anyone else) tested the Products, nor does he point to any

22 studies, publications, articles, or indeed *anything at all* that might support his assertion.

23 Stripped of regurgitations of the language of the regulations, Plaintiff's allegations

24 amount to a one-sentence conclusion that Gatorade Fit must comply with the fortification

25 policy.  This is not enough to state a claim.  Plaintiff must allege *facts*—not guesswork—

26 that would allow the Court to plausibly conclude that Gatorade Fit does not contain

27 enough vitamins without fortification to meet the regulatory threshold.

28

*Second*, Plaintiff's theory that FDA's policy would not permit Gatorade Fit to be fortified with vitamins A and C is wrong as a matter of law.  FDA authorizes products like Gatorade Fit to be fortified with vitamins to correct a "dietary insufficiency"—such as under-consumption of vitamins A and C.  Plaintiff's challenge to the alleged fortification of Gatorade Fit with these vitamins conflicts with FDA regulations and the source cited *in his own complaint*.  Because Plaintiff does not plead any violation of federal law, his claims are preempted and inadequately pled.

Plaintiff and his counsel have combed through the regulations in the hopes of finding a technical violation to support a claim.  But California's consumer deception laws do not exist to stop a phantom scourge of vitamin-enhanced sports drinks, and Plaintiff's baseless speculation about Gatorade Fit's ingredients and public health are not enough to support a claim.  Rule 8 simply "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  The Court should dismiss Plaintiff's Complaint.

## BACKGROUND

### A.    Factual Allegations

Gatorade Fit is an electrolyte hydration sports beverage manufactured by PepsiCo under the well-known Gatorade brand.  Gatorade Fit comes in a variety of flavors, including Tropical Mango, Citrus Berry, Watermelon Strawberry, Cherry Lime, and Tangerine Orange.  ECF No. 1 ("Compl.") ¶ 12.  All flavors include the ingredients watermelon juice concentrate, sea salt, and citric acid, as well as additional vitamins, and supply 100% of the reference daily intake for vitamins A and C based on a 2,000-calorie diet.  *Id.* ¶ 16.  The Complaint does not allege how much vitamin A or C in the Products comes from the watermelon juice concentrate, sea salt, or citric acid, as opposed to from the added vitamins.

Plaintiff David Gumner is a California resident who claims that, "[a]s best he can recall," he purchased Gatorade Fit "in or around November of 2022" in Laguna Niguel, California.  Compl. ¶ 39.  Plaintiff identifies four aspects of the Products' labeling that he

contends are unlawful and render the Products "misbranded"—the statements "Healthy Real Hydration," "No Added Sugar," "Excellent Source of Antioxidant Vitamins A & C," and "Excellent Source of Vitamins A & C." *Id.* ¶ 40.

Plaintiff does not allege that any of the challenged statements are untrue or deceptive. Instead, he contends the Products are misbranded under California Health and Safety Code §§ 109875, *et seq.* (the "Sherman Law"), which incorporates federal food-labeling regulations into California law. Compl. ¶ 22. Specifically, he alleges that "Healthy Real Hydration" violates FDA regulations governing the use of the term "healthy" on product labels because the Products are fortified but do not comply with FDA's policy on fortification. *Id.* ¶¶ 20, 21, 24–27, 38. Plaintiff alleges that he "paid more for Gatorade Fit" because of the allegedly unlawful claims "or would only have been willing to pay less" without them. *Id.* ¶ 41. While his claims indicate his belief that he lost money, Plaintiff does not seek money damages. Rather, Plaintiff seeks solely equitable relief (1) under the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL") and (2) for unjust enrichment. *Id.* ¶¶ 60–68, 70–73.

**B.    Regulatory Framework**

Plaintiff's claims arise in the context of a framework of regulations designed to ensure consistency and transparency on food labels nationwide. FDA, through the federal Food, Drug, and Cosmetic Act ("FDCA") and its accompanying regulations, has implemented a "comprehensive scheme" governing food-labeling. *See Dvora v. Gen. Mills, Inc.*, No. 11-cv-1074-GW, 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011). Plaintiff's allegations implicate several of these federal regulations.

***Fortification Policy.*** Central to the Complaint is FDA's fortification policy, a non-binding set of guidelines designed to encourage manufacturers to sensibly use nutrient fortification. 21 C.F.R. § 104.20. The policy observes that nutrient fortification of foods and beverages "can be an effective way of maintaining and improving" nutritional quality, but also that "random fortification of foods" could result in nutrient imbalances. *Id.* § 104.20(a). The policy accordingly disapproves of fortifying certain listed items, such

as meat, fish, and candy. *Id*. The policy also encourages manufacturers to limit fortification to four purposes. *Id*. §§ 104.20(b)–(e) (fortification permitted (1) "to correct a dietary insufficiency recognized by the scientific community," (2) "to restore such nutrient(s) to a level(s) representative of the food prior to storage, handling and processing," (3) "to avoid nutritional inferiority" when replacing a traditional food, and (4) "in proportion to the total caloric content . . . to balance the vitamin, mineral, and protein content"). Importantly, while the fortification policy is in the Code of Federal Regulations, it is generally non-binding. *See* Food & Drug Admin., Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed. Reg. 2302, 2362 (Jan. 6, 1993) (to be codified 21 C.F.R. parts 5 and 101) (RJN Ex. 1) ("[I]t is true that the fortification policy is only a guideline").[1]

   ***"Healthy" Claims***. FDA regulations outline certain requirements for when the term "healthy" can be made as an "implied nutrient content claim." 21 C.F.R. § 101.65(d)(2). For beverages like Gatorade Fit, a "healthy" claim is authorized on products that are low fat, low in saturated fat, and below cholesterol levels set by the regulations. The beverages must also supply at least ten percent of the reference daily intake ("RDI") of one or more listed nutrients, including vitamins A or C. *See* 21 C.F.R. § 101.65(d)(2)(i)(F). Here, a "healthy" claim would be authorized under this rule if a beverage contained at least 90 micrograms of vitamin A or 9 milligrams of vitamin C per 12 ounces. *See id.* ("healthy" claim permissible where there is at least ten percent of nutrient's RDI); 21 C.F.R. § 101.9(c)(8)(iv) (providing that total RDI for vitamin A is 900 micrograms and 90 milligrams for vitamin C). If a product meets the ten percent requirement only through fortification with added nutrients, it must also comply with the otherwise non-binding fortification policy. *See* 21 C.F.R. § 101.65(d)(iv). If the product

---

[1] As set forth in PepsiCo's contemporaneously-filed Request for Judicial Notice ("RJN"), courts routinely take judicial notice of nonbinding guidance from FDA and the contents of the Federal Register, as they are "matters of public record."

meets the ten percent threshold for any listed nutrient *without* fortification, the fortification policy remains non-binding and inapplicable.

*"Excellent Source" and "No Added Sugar" Claims*.   The Complaint also references "Excellent Source of Vitamins A & C" and "No Added Sugar" claims, which are likewise governed by federal regulations.   The claim "excellent source" in reference to a nutrient may be used where, among other things, a product contains "20 percent or more of the RDI . . . per reference amount" consumed.   21 C.F.R. § 101.54(b)(1).   The term "no added sugar" may be used if the product complies with the requirements in 21 C.F.R. § 101.60(c)(2), including that sugars (or ingredients containing added sugars) are not added during processing or packaging.   Neither the "excellent source" nor "no added sugar" requirements tethers its application to the fortification policy.   *See id*.; 21 C.F.R. § 101.54(b)(1).

## LEGAL STANDARD

The Supremacy Clause of the U.S. Constitution grants Congress the power to preempt state law.   *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).   In the food labeling context, a claim is preempted if it seeks to impose food labeling requirements "not identical to" federal law.   *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1038 (N.D. Cal. 2013).   Any state-law claims that are preempted by federal law must be dismissed.   *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1008 (9th Cir. 2008).

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim only has facial plausibility when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*. at 663.   Although the Court must accept well-pleaded factual allegations as true, this tenet is "inapplicable to legal conclusions."   *Id*. at 678.   After stripping away the "conclusory statements," the Court must rely on its "judicial experience and common sense" *id*. at 678–79, to determine whether the remaining factual

allegations "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and would justify subjecting the defendant to the costs and burdens of discovery. Dismissal is also warranted where a complaint lacks a cognizable theory or fails to plead essential facts under that theory. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

## ARGUMENT

## I. Plaintiff Does Not Plausibly Allege that Gatorade Fit's Labeling Violates Federal Law

### A. Plaintiff Does Not Plead Any Facts to Support a Regulatory Violation

Plaintiff stakes his Complaint entirely on the theory that the Products are misbranded as "healthy" because their labeling does not comply with the technical requirements of FDA's fortification policy. Compl. ¶¶ 24–38, 60–62. But Plaintiff does not allege *any* facts supporting his assertion that the fortification policy is even implicated here, and Plaintiff cannot plead a regulatory violation through his own say-so. Moreover, even if Plaintiff *had* sufficiently alleged that the Products must comply with the fortification policy (he has not), he still has not pleaded a regulatory violation because he does not plausibly allege that the Products are not fortified for a permissible purpose.

#### 1. Plaintiff Pleads No Facts to Show the Fortification Policy Applies

Plaintiff does not dispute that the Products' final formulation meets the necessary nutrient content thresholds to lawfully make the claim "Healthy Real Hydration." Instead, his theory is that the claim is not permitted because the Products do not comply with the fortification policy; he alleges that the addition of vitamins A and C does not meet one of the recommended purposes in the policy. Compl. ¶¶ 31–38. But the fortification policy is generally *non-binding*. *See* 21 C.F.R. § 104.20; RJN Ex. 1. It is not even binding on every product labeled "healthy." Instead, products labeled "healthy" need only satisfy the fortification policy *if* they would not contain ten percent of the RDI for *either* vitamin A *or* C absent fortification. 21 C.F.R. § 101.65(d)(iv).

This means that Plaintiff must allege—with facts—that Gatorade Fit would not contain ten percent of the RDI for vitamins A or C absent the added vitamin ingredients. But Plaintiff has very little to say about this critical threshold issue. The Complaint has a grand total of two allegations, and both are conclusory:

- "Absent fortification, no Gatorade Fit variety would provide 10% or more vitamin A or C[.]" Compl. ¶ 16.

- "None of the Gatorade Fit products meet the 10 percent requirement without fortification and thus must comply with the fortification policy." *Id.* ¶ 31.

That is the extent of Plaintiff's allegations about the premise of his entire Complaint. There is nothing else. Plaintiff does not allege how much vitamin A and C comes from the watermelon juice concentrate, citric acid, and sea salt in the Products. Is it less than 90 micrograms of vitamin A? Less than 9 milligrams of vitamin C? Plaintiff does not say. Plaintiff does not allege that testing of the Products shows that all or most of the vitamin A and C content is derived from fortification. And Plaintiff does not cite any publications, articles, consumer studies, or other sources that support his view that fortification is the only way in which the Products' vitamin A or vitamin C content meets the requisite levels for a "healthy" claim. The Complaint turns entirely on Plaintiff's unsupported *ipse dixit*.

The federal pleading standards require much more, and courts routinely dismiss claims based on similar wholesale conjecture about a product's ingredients or nutrient content. In *Svensrud v. Frito-Lay North America, Inc.*, No. 8:20-cv-0714-JLS-DFM, 2020 WL 8575056 (C.D. Cal. Dec. 21, 2020), for example, the court dismissed claims challenging the lack of "Artificially Flavored" labeling on chips where the plaintiff "merely allege[d], without any further support" that the product contained artificial cheddar flavor. *Id.* at *4. The court explained that these "conclusory assertions" were "devoid of any facts suggesting the basis for [plaintiff's] claim" that the chips were artificially flavored and thus were inadequate to "nudge [the] claims . . . across the line from conceivable to plausible." *Id.* (citations and internal quotation marks omitted).

Similarly, in *Osborne v. Kraft Foods Group, Inc.*, No. 15-cv-2653-VC (N.D. Cal. Oct. 15, 2015), the court dismissed claims alleging that Capri Sun juice contained unnatural citric acid because the plaintiff "ha[d] no idea whether Kraft's citric acid that it use[d] in Capri Sun is natural or not[.]" ECF No. 31 at 12. The court also observed that the plaintiff's "I'm going to file a lawsuit and then ask questions later" approach "created a bit of a Rule 11 problem." *Id.* at 11. And in *Hoffman v. Kraft Heinz Foods Co*., No. 22-CV-397 (KMK), 2023 WL 1824795 (S.D.N.Y. Feb. 7, 2023), another court recently dismissed claims challenging the alleged use of artificial malic acid in beverage concentrates because the complaint lacked "any factually substantiated allegations" that the malic acid in the products was artificial instead of natural. *Id.* at *8.[2]

This is common sense: A plaintiff simply is not entitled to "file[] suit only to ask later" whether the challenged products are actually as the plaintiff says they are. *Forsher v. J.M. Smucker Co.*, 612 F. Supp. 3d 714, 722 (N.D. Ohio 2020) (dismissing claims challenging "natural" labeling on peanut butter where the complaint lacked facts to support the allegation that the ingredients were genetically modified). This baseline rule bars Plaintiff's claims. Without alleging *facts*—not conclusions or assumptions—supporting his threshold assertion that the Products must comply with FDA's fortification policy, Plaintiff has not pleaded any regulatory violation.

---

[2] *See also, e.g.*, *Santiful v. Wegmans Food Mkts., Inc.*, No. 20-CV-2933 (NSR), 2022 WL 268955, at *4 (S.D.N.Y. Jan. 28, 2022) (dismissing claims challenging flavor labeling due to the lack of "factually substantiated allegations that these flavors are in fact not derived from natural sources"); *Cosgrove v. Or. Chai, Inc.*, 520 F. Supp. 3d 562, 584 (S.D.N.Y. 2021) (dismissing complaint that "failed plausibly to allege that the challenged flavoring substances were artificially derived"); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 803 (S.D.N.Y. 2021) (similar); *Robie v. Trader Joe's Co.*, No. 20-CV-07355-JSW, 2021 WL 2548960, at *4–6 (N.D. Cal. June 14, 2021) (plaintiff's "conclusory allegations that the flavoring is artificial [were] insufficient to state a claim"); *Steele v. Wegmans Food Mkts., Inc.*, 472 F. Supp. 3d 47, 51 (S.D.N.Y. 2020) (dismissing complaint challenging flavor labeling where the source of the vanilla flavor was "left to speculation"); *Zaback v. Kellogg Sales Co.*, No. 3:20-cv-00268-BEN-MSB, 2020 WL 3414656, at *3 (S.D. Cal. June 22, 2020) (dismissing claims challenging granola products' flavor labeling where Plaintiff was "merely speculating" that the product did not contain flavor derived from vanilla beans).

### 2. Plaintiff Does Not Plead that Gatorade Fit Does Not Comply with the Fortification Policy

Not only does Plaintiff fail to adequately plead that Gatorade Fit *must* comply with the fortification policy, he also fails to adequately plead that Gatorade Fit *does not* comply with the policy. To satisfy the fortification policy, a product must not be in a category for which FDA has prohibited fortification, and the nutrients must be added to the product for an appropriate purpose. Gatorade Fit meets both criteria. The fortification policy does not preclude fortification of beverages like Gatorade Fit. *See* 21 C.F.R. § 104.20(a) (defining products for which fortification is prohibited). And the addition of vitamins A and C through fortification is authorized under the policy "to correct a dietary insufficiency recognized by the scientific community to exist and known to result in nutritional deficiency disease." *Id*. § 104.20(b).

For decades, the scientific community has conducted research on nutrient intake through the National Health and Nutrition Examination Survey ("NHANES"), a bi-yearly cross-sectional study of the U.S. population. NHANES is conducted by the CDC and frequently relied upon by FDA, which has characterized it as "the most comprehensive dataset available on dietary intake in the U.S."[3] Relying on NHANES data, the scientific community has recognized the "dietary insufficiency" of both vitamins A and C. A 2020 analysis of NHANES data published on the National Institutes of Health's (NIH) website, which covers 26,000 adults and spans 12 years, calculates that 45% of the U.S. population has inadequate vitamin A intake and 46% of the U.S. population has inadequate vitamin C intake.[4] It observes that "[v]itamin A deficiency is a global public health problem and

---

[3] U.S. Food & Drug Admin, *FDA Requests Information on Expansion of the Rarely Consumed Raw List for Uncommonly Consumed Produce*, (Aug. 6, 2020), *available at* https://www.fda.gov/food/cfsan-constituent-updates/fda-requests-information-expansion-rarely-consumed-raw-list-uncommonly-consumed-produce (RJN Ex. 2); *see also* 21 C.F.R. § 101.12(b), Table 1, n.1 (explaining NHANES is the basis of FDA's reference amounts).

[4] C.A. Reider, et al., *Inadequacy of Immune Health Nutrients: Intakes in US Adults, the 2005-2016 NHANES*. 12 Nutrients 1735 (June 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7352522/ (RJN Ex. 3). Studies

increases the risk of infectious diseases" and that the prevalence of vitamin C inadequacy now is higher than in previous NHANES data.   Similarly, a 2021 analysis of blood samples from more than 7,000 U.S. study participants collected by NHANES concluded that "*insufficient Vitamin C levels remain a current public health issue*," and are known to cause scurvy, chronic inflammation, and other diseases.[5]

Plaintiff apparently disagrees with this settled public health view.  He alleges that fortification of Gatorade Fit with vitamins A and C is not appropriate because "vitamin A and vitamin C deficiencies are extremely rare."  Compl. ¶ 34.  But the only source Plaintiff cites *contradicts* that assertion.  It lists vitamins A and C among the "food components [that] are *underconsumed* by all Americans ages 1 year and older" and that "pose special public health challenges," and repeats that "[f]ood components *underconsumed by the entire population include … vitamins A, C,* D, E, and K."[6]  Plaintiff's allegations focus on the report's assessment that vitamins A and C "do not appear to pose a public health concern, given the present lack of adverse clinical and health outcome data" (Compl. ¶ 34), but the fortification policy does not require a "public health concern"—just a "dietary insufficiency" that can cause disease.   Plaintiff's source confirms that such an insufficiency is known by the scientific community to exist.

_____

published on the NIH website are appropriate subjects of judicial notice.  *See* RJN.

[5] J. Crook, et al*., Insufficient Vitamin C Levels among Adults in the United States*, 13 Nutrients 3910 (Nov. 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8625707/ (emphasis added) (RJN Ex. 4); *see also* J. Lykkesfeldt, *Vitamin C*, 5 Advances in Nutrition 16 (Jan. 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3884093/ (vitamin C deficiency may "increase the risk of cardiovascular and all-cause mortality") (RJN Ex. 5).

[6] Scientific Report of the 2020 Dietary Guidelines Advisory Committee, Part D, Chapter 1:   Current Intakes of Foods, Beverages, and Nutrients at 62, 68 https://www.dietaryguidelines.gov/sites/default/files/2020-07/PartD_Ch1_CurrIntakes_first-print.pdf (emphases added). The Court may consider this source because Plaintiff quoted from this same sentence in his Complaint (¶ 34).  *See Twombly*, 550 U.S. at 568 n.13.

The Court need not accept the truth of Plaintiff's allegations when they are squarely contradicted by his own source and other judicially noticeable sources utilized by FDA that repeatedly conclude that vitamin A and C insufficiencies exist in the United States and are known to cause disease. *See Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) (dismissing complaint where articles incorporated by reference "contradict[ed] the allegation upon which [plaintiff's] entire complaint hinges"); *Dig. Mktg. Advisors v. McCandless Grp., LLC*, No. 2:21-cv-06888-AB-GJS, 2022 WL 18216003, at *3 (C.D. Cal. Mar. 28, 2022) (similar). And Plaintiff's additional reference to a purported CDC "report[ ] that a vitamin A or C deficiency is 'rare in the United States'" (Comp. ¶ 34) is uncited and cannot nullify the CDC's NHANES data and findings that are cited in the Complaint.

Because Plaintiff does not plausibly allege that there is no recognized "dietary insufficiency" recognized by scientists to result in a nutritional deficiency disease (21 C.F.R. § 104.20(b)), he has not plausibly alleged that Gatorade Fit does not comply with the fortification policy, even if it applied here.

## B. Plaintiff's Failure to Plead Facts Supporting the Alleged Regulatory Violation Requires Dismissal of All of His Claims

Plaintiff's failure to allege facts to support his asserted regulatory violation dooms his claims on multiple grounds. *First*, both of Plaintiff's claims are preempted because he fails to plausibly allege a violation of federal law and instead seeks to impose different labeling requirements under the guise of state law. *Second*, Plaintiff's UCL claim fails because he has simply not alleged any "unlawful" or "unfair" conduct. *Finally*, this pleading failure also requires dismissal of the unjust enrichment claim.

### 1. Plaintiff's Claims Are Preempted

Plaintiff's failure to plausibly allege that the Products violate federal regulations means the entire Complaint should be dismissed as expressly preempted. *Ivie*, 961 F. Supp. 2d at 1037–38. The gravamen of Plaintiff's claims is that the Products are

misbranded under California's Sherman Law.  *See* Compl. ¶¶ 22, 24, 31–33.[7]  Under the FDCA's express preemption provision, state-law claims that would result in labeling requirements not identical to FDA regulations are preempted.  *See In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, No. 16-cv-1442-PSG, 2017 WL 4676585, at *6 (C.D. Cal. Oct. 10, 2017).  In other words, to avoid preemption, Plaintiff's "allegations must show that the Product[s] violate[] the FDCA's labeling requirements." *Svensrud*, 2020 WL 8575056, at *2.

Plaintiff does not plausibly allege that the Products violate the FDCA's labeling requirements.  He does not sufficiently plead that the Products must comply with the fortification policy or that they are impermissibly fortified.  If accepted, Plaintiff's claims would expand the scope of FDA's fortification policy by rendering compliance with it obligatory for all products that carry the term "healthy"—regardless of whether fortification was necessary to reach the ten percent regulatory threshold or not.  But this is not the rule FDA adopted, and preemption exists precisely to avoid this sort of rewrite of the regulations by an individual plaintiff suing under state law.  Plaintiff's claims also would hold PepsiCo liable for allegedly fortifying Gatorade Fit with vitamins for a purpose expressly authorized by FDA:  to "correct a dietary insufficiency recognized by the scientific community to exist and known to result in nutritional deficiency disease." 21 C.F.R. § 104.20(b).  Plaintiff cannot turn to state law to substitute his own contrary judgment for that of FDA or the scientific community.

Courts have repeatedly reached the same conclusion in similar circumstances.  In *Svensrud*, for example, the court dismissed as preempted the plaintiff's claims that Frito-Lay Ruffles Cheddar & Sour Cream potato chips should be labeled "Artificially Flavored" on the front of the packaging because the plaintiff failed to plausibly allege "that

---

[7] California's Sherman Law ties its food labeling requirements to federal law.  *See* Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, . . . shall be the food labeling regulations of this state."); *id.* § 110670 ("Any food is misbranded if its labeling does not conform with . . . the federal act and the regulations adopted pursuant thereto.").

Defendant added artificial cheddar flavor to its Product or that the Product does not contain real cheese," and thus "there [wa]s nothing in the Complaint plausibly alleging that the Product's label violates the FDCA."  2020 WL 8575056, at *3–4; *see also, e.g.*, *In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, 2018 WL 1616053, at *3 (C.D. Cal. Mar. 8, 2018) (plaintiff could not "evade preemption" where complaint did not plead FDCA violation or raise claims not addressed by federal law); *Dvora*, 2011 WL 1897349, at *5–6 (claim preempted where plaintiff sought "to impose limitations" on defendant that were "different from what federal regulations" permit).

Because Plaintiff has not plausibly alleged that the Products' labeling violates federal law, holding that the Products are misbranded under California's Sherman Law would impose labeling requirements that are not required under the federal regulatory scheme.  As a result, Plaintiff's claims are preempted and must be dismissed.

### 2.   Plaintiff Does Not Plausibly Allege that the Products' Labeling Is "Unlawful" or "Unfair"

Preemption ends the case.  But even if preemption did not bar Plaintiff's claims, his UCL claim still must be dismissed for failure to state a claim because he has not plausibly alleged "unlawful" or "unfair" conduct.  *Svensrud*, 2020 WL 8575056, at *4; *Robie*, 2021 WL 2548960, at *4–6.

Plaintiff bases his "unlawful" claim solely on the Products' alleged failure to comply with FDA's fortification policy (Compl. ¶¶ 24–38, 60), yet he puts forth *no facts* to support his conclusory contention that the policy applies or has been violated here.  *See* Section I.A, *supra*.  Without sufficient factual allegations on this critical point, Plaintiff cannot plausibly allege that the Products' labeling is unlawful and violates the UCL.  And because Plaintiff's claim under the "unfair" prong of the UCL is based on the exact same allegedly unlawful labeling (*see* Compl. ¶¶ 61–68), it fails along with the "unlawful" claim.  *See Chong v. Nestle Waters N. Am., Inc.*, No. CV-19-10901-DMG-KSX, 2020 WL 7690175, at * 9 (C.D. Cal. Nov. 30, 2022) (granting motion to dismiss "unfair" UCL claim based on same rejected mislabeling theory as "unlawful" UCL claim).

The Complaint's dearth of factual allegations lays bare that Plaintiff's UCL claim is really a thinly veiled effort to force PepsiCo to substantiate its "healthy" claims, based on nothing more than Plaintiff's unsupported hunch that the Products' labeling is technically not compliant with federal regulations.   But this Court—like the Ninth Circuit—has squarely held that "California law generally does not allow private litigants to pursue an action to force manufacturers to 'substantiate' representations about their products."   *Myers v. Starbucks Corp.*, No. CV-20-00335-CJC(SHKx), 2020 WL 13302437, at *3 (C.D. Cal. July 29, 2020) (Carney, J.); *see also Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095–96 (9th Cir. 2017) ("[P]rivate plaintiffs, unlike prosecuting authorities, do not have the power to require defendants to substantiate their advertising claims[.]").   Plaintiff is not entitled to substantiation on demand; in order to state a claim for violation of the UCL, he must come forward with *facts* to plausibly allege that the regulations have been violated.   Here he has none.

Plaintiff also cannot base his UCL claim on the Products' "No Added Sugar" or "Excellent Source of Vitamins A & C" labeling.   The Complaint does not allege that the Products are not permissibly labeled as "excellent sources" of vitamin A and vitamin C, or that they contain added sugars.   And Plaintiff's conclusory assertions about the fortification policy are irrelevant because the regulations governing "excellent source" and "no added sugar" labeling do not tether the use of these statements to a product's compliance with FDA's fortification policy.   *See* 21 C.F.R. §§ 101.54, 101.60.   Plaintiff's failure to plausibly allege that the Products are misbranded in violation of federal law means his UCL claim must be dismissed.[8]

---

[8] Plaintiff makes one stray reference to "deceptive practices," (Compl. ¶ 65), but he pleads no facts at all regarding this alleged "deception" or how the Products' labeling could be misleading to a reasonable consumer under the Rule 8 standard, let alone any facts capable of meeting the heightened Rule 9(b) pleading standard for claims that sound in fraud.   *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

### 3. Plaintiff's Unjust Enrichment Claim Based on the Same Alleged Conduct Must Be Dismissed

Plaintiff's unjust enrichment claim is based on the same allegations that fail to support the UCL claim and should be dismissed for this reason alone. Compl. ¶¶ 69–73; *see also In re Quaker Oats*, 2018 WL 1616053, at *4 ("Because Plaintiffs have not stated viable underlying claims, there is no foundation upon which to base the remaining cause of action for unjust enrichment."). In addition, this Court, along with "many" others in this District, does not recognize unjust enrichment as a "separate cause of action in California," which independently requires dismissal of Plaintiff's claim. *Gershfeld v. Teamviewer US, Inc.*, No. 21-cv-00058-CJC, 2021 WL 3046775, at *3 (C.D. Cal. June 24, 2021) (Carney, J.) (collecting cases).

\* \* \*

In short, Plaintiff has failed to plead the fundamental premise underlying all of his claims—that the Products' labeling violates federal law. A conclusory assertion that the fortification policy applies or was violated is not enough. The Court need go no further to dismiss the Complaint as preempted or for failure to state a claim.

## II. Plaintiff Does Not Plead that Reliance on Any Alleged Misstatement Caused His Alleged Injury

Plaintiff's UCL claim independently fails because the Complaint does not satisfy the UCL's standing requirements. A plaintiff cannot sue under the UCL unless he can "plead and prove actual reliance on the misrepresentations or omissions at issue." *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (citing *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326–27 (2011)). Plaintiff has not done so here.

As the California Court of Appeal has explained, pleading reliance requires a plaintiff to "truthfully allege" that he "would not have bought the product but for the allegedly actionable misrepresentation." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1143 (2020) (citation omitted); *see also Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1145 (N.D. Cal. 2013) (the UCL requires "plaintiffs to have suffered economic injury 'as a result of' the unfair competition they allege"). And allegations of

reliance must be plausible:  Courts routinely dismiss UCL claims based on "conclusory" allegations that the plaintiff "read and relied on the misleading label," without any additional facts.  *Shin v. Campbell Soup Co.*, No. CV 17-1082-DMG (JCx), 2017 WL 3534991, at *6 (C.D. Cal. Aug. 9, 2017); *see also Figy v. Amy's Kitchen, Inc.*, No. CV-13-03816-SI, 2013 WL 6169503, at *4 (N.D. Cal. Nov. 25, 2013) (holding that plaintiff failed to plausibly allege actual reliance where the complaint failed to allege he read the label "prior to purchasing the products").

At the outset, Plaintiff cannot plead reliance on any of the challenged statements because he has not plausibly alleged they violate federal regulations.  *See* Section I.A, *supra*.  Reliance cannot be based on labeling that is not unlawful.  *See Shin*, 2017 WL 3534991, at *6 ("Shin does not plausibly allege how she plausibly was misled by a truthful label."); *Shaeffer*, 44 Cal. App. 5th at 1143–44 (plaintiff failed to "truthfully allege" actual reliance on any *actionable* statement or omission).  But in any event, Plaintiff's allegations of reliance also fail as wholly conclusory.  Plaintiff alleges that "[i]n purchasing Gatorade Fit," he was "exposed to, read, and relied upon the Misbranded Claims."  Compl. ¶ 40.  He does not say whether he read any of the "Misbranded Claims" before or after he made his decision to purchase.  He does not allege that he expected a "healthy" product, one without added sugar, or an "excellent source" of vitamins, but did not receive it.  And he does not allege that he would not have bought the Products but for any of these statements.  Plaintiff simply cannot rely on "cursory, formulaic" recitations devoid of any "factual allegations concerning the circumstances" of his alleged purchase to state a plausible claim for relief.  *Gomez v. Jelly Belly Candy Co.*, No. CV-17-00575-CJC-FFM(x), 2017 WL 2598551, at *2 (C.D. Cal. June 8, 2017) (Carney, J.).

Plaintiff's allegations are similar to the allegations this Court rejected in *Gomez*.  There, the plaintiff claimed she was misled by "evaporated cane juice" labeling on jelly beans and did not understand that this ingredient was actually sugar.  *See id*.  In dismissing the complaint, this Court observed that the complaint failed to plead reliance because it contained no factual allegations about the circumstances of the plaintiff's purchase,

1   whether she "in fact expected a sugar-free product," what she understood "evaporated

2   cane juice" to mean, and whether she consumed the jelly beans.  *Id*.  Plaintiff's similarly

3   bare bones assertions here should likewise be dismissed.

4         Moreover, Plaintiff's theory of reliance defies plausibility.  He claims the Products

5   were misbranded as "healthy" because the required levels of vitamin A or vitamin C came

6   from fortification.  But the Complaint pleads no facts to suggest that Plaintiff, in making

7   his purchase, believed "Healthy Real Hydration" meant the Products contained at least 90

8   micrograms of vitamin A or 9 milligrams of vitamin C from a source other than added

9   vitamins.  And it simply is not plausible that Plaintiff would have such a technical

10   understanding of the word "healthy" while he was shopping.  Nor does the Complaint

11   plead any facts to suggest that Plaintiff had any knowledge or expectations about whether

12   the scientific community has recognized a "dietary insufficiency" of vitamins A or C that

13   would support fortification in any event.  "[A]verage consumers are not likely to be aware

14   of the nuances of the FDA's regulations."  Order at 11–12, *Smith v. Gen. Mills Sales, Inc.*,

15   No. 1:22-cv-01529 (N.D. Ill. Mar. 3, 2023), ECF No. 25 (dismissing plaintiff's consumer

16   deception claim).  Without plausible allegations of reliance, Plaintiff's UCL claim fails.

17   **III.   Plaintiff Does Not Plead Entitlement to Equitable Relief**

18         Even if Plaintiff had otherwise stated a valid claim (which he has not), dismissal is

19   still appropriate because Plaintiff is not entitled to any of the purely equitable remedies

20   he seeks—restitution and injunctive relief.

21         **A.   Plaintiff Cannot Seek Restitution Because He Does Not (and Cannot)**
22         **Allege that He Lacks an Adequate Remedy at Law**

23         In order to state a claim for "equitable restitution for past harm under the UCL," a

24   complaint "must allege that the plaintiff lacks an adequate legal remedy."  *Ibarra v.*

25   *Pharmagenics LLC*, No. CV-23-00116-CJC-ADS(x), 2023 WL 2445397, at *4 (C.D. Cal.

26   Mar. 8, 2023) (Carney, J.) (quoting *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844

27   (9th Cir. 2020)).  This requires the plaintiff to "allege some facts suggesting that damages

28

1    are insufficient to make [him] whole." *Id.*[9]  Plaintiff has not even attempted to meet this

2    standard.    While Plaintiff alleges that his "legal remedies are inadequate to

3    prevent … future injuries" (Compl. ¶ 47), the Complaint is completely silent about

4    whether legal remedies would be adequate to remedy Plaintiff's alleged past harms of lost

5    money and overpayment (*id.* ¶¶ 41, 45).

6         This Court should dismiss Plaintiff's UCL claim without leave to amend because

7    Plaintiff cannot plausibly allege that he lacks an adequate remedy at law for his alleged

8    past harm.  Plaintiff alleges he was injured because he "paid more" for the Products than

9    he otherwise would have "or would only have been willing to pay less."  Compl. ¶ 41.

10   These are quintessential monetary harms that can be redressed through monetary

11   damages.  *See Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV-20-00769-CJC-

12   GJS(x), 2020 WL 5492990, at *3–4 (C.D. Cal. Sept. 9, 2020) (Carney, J.) (dismissing

13   equitable claims where there was "nothing" to "suggest that monetary damages would not

14   make Plaintiff or the putative class whole"); *Adams v. Cole Haan, LLC*, No. 20-cv-913,

15   2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020) (holding that "lost money" is "a form

16   of harm for which legal damages does seem to be an adequate remedy").  It makes no

17   difference that Plaintiff elected to pursue only equitable remedies instead of damages.

18   What matters is that alternate legal remedies are *available* to Plaintiff, not whether he

19   "chooses to pursue" them.  *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund. Inc.*,

20   339 F.3d 1087, 1093 (9th Cir. 2003).  Otherwise, any plaintiff could create federal

21   equitable jurisdiction "solely by electing one remedy over another."  *Barrett v. Optimum

22   Nutrition, Inc.*, No. CV-21-4398-DMG, 2022 WL 3452791, at *1 (C.D. Cal. July 18,

23   2022).

24

25   _____

26   [9] *See Lisner v. Sparc Grp. LLC*, No. 2:21-CV-05713-AB, 2021 WL 6284158, at *8 (C.D. Cal. Dec. 29, 2021) ("[I]t is not an unfair burden to require Plaintiffs to explain *why* legal remedies are inadequate in their pleading."); *Reilly v. Apple Inc.*, 578 F. Supp. 3d 1098, 1112 (N.D. Cal. 2022) (dismissing complaint where plaintiff "merely assert[ed] that he lacks adequate remedies at law, [ ] but fail[ed] to allege facts or reasons why").

28

Because Plaintiff cannot carry his burden of plausibly alleging that damages are insufficient and a legal remedy is unavailable, his UCL claim for restitution should be dismissed without leave to amend. *See Clevenger v. Welch Foods Inc.*, No. CV-20-01859-CJC-JDE(x), 2022 WL 18228288, at *6 (C.D. Cal. Dec. 14, 2022) (Carney, J.).[10]

**B.    Plaintiff Lacks Standing to Seek Injunctive Relief**

Plaintiff's request for injunctive relief under the UCL should also be dismissed for lack of Article III standing because he has not alleged the requisite "actual and imminent" threat of future harm from an alleged technical violation of a federal regulation.

Plaintiff does not allege that he wants to purchase Gatorade Fit as labeled currently, or that he will be deceived in the future. Nor does he allege that there is an actual risk that he would be deceived into purchasing a product that is not healthy, or contains less vitamin A or vitamin C than advertised. Instead, he merely claims that he "continues to see Gatorade Fit at stores" and "would purchase Gatorade Fit in the future if they were not misbranded, but unless Pepsi is enjoined in the manner Plaintiff requests, he may not be able to reasonably determine whether the Products have been changed or reformulated to conform with FDA regulations." Compl. ¶ 46. This is insufficient to allege an "actual and imminent, not conjectural or hypothetical threat of future harm." *Graham v. Cent. Garden & Pet Co.*, No. 22-cv-06507-JSC, 2023 WL 2744391, at *4 (N.D. Cal. Mar. 30, 2023).

Plaintiff's allegations are similar to those the Ninth Circuit rejected in *In re Coca-Cola Products Marketing & Sales Practices Litigation*, No. 20-15742, 2021 WL 3878654 (9th Cir. Aug. 31, 2021). There, like here, no plaintiff desired to purchase the products "as advertised." *Id*. at *2. Instead, like here, the plaintiffs alleged they "would consider purchasing" the products again only "if" they "were properly labeled." *Compare id*., *with* Compl. ¶ 46 (Plaintiff "would purchase Gatorade Fit . . . if they were not misbranded").

---

[10] The failure to plead a lack of adequate legal remedies also requires dismissal of Plaintiff's equitable claim for unjust enrichment. *See Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125, at *14 (C.D. Cal. Nov. 23, 2020).

The Ninth Circuit affirmed the dismissal of plaintiffs' injunctive relief claim for lack of standing, emphasizing that plaintiffs' "abstract interest in compliance with labeling requirements is insufficient . . . to establish Article III standing," and "the imminent injury requirement is not met by alleging that the plaintiffs would *consider* purchasing Coke." *Coca-Cola*, 2021 WL 3878654, at *2 (emphasis in original). Absent a *clear intention* to buy Gatorade Fit in the future, or facts supporting that Plaintiff will be deceived and cannot rely on the Products' labeling, Plaintiff lacks standing to seek injunctive relief under the UCL. *See Graham*, 2023 WL 2744391, at *4.

## CONCLUSION

Plaintiff cannot simply proclaim that he believes a product label technically violates a single federal regulation and, on this basis alone, force a defendant to substantiate its labels through costly discovery. California and federal law require much more—at a minimum, *some facts* to support the allegation. Plaintiff has none, and his claims are inherently implausible, preempted, and incompatible with the law. The Court should dismiss the Complaint in its entirety, without leave to amend.

Dated:  April 28, 2023          Respectfully Submitted,

*/s/ Andrew S. Tulumello*
ANDREW S. TULUMELLO (SBN #196484)
drew.tulumello@weil.com
CLAIRE L. CHAPLA (SBN #314255)
claire.chapla@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorneys for Defendant PepsiCo, Inc.*

## CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for PepsiCo, Inc., certifies that this brief contains 6,933 words, which compiles with the word limit of L.R. 11-6.1.

By: */s/ Andrew S. Tulumello*
Andrew S. Tulumello

## CERTIFICATE OF SERVICE

I hereby certify that on April 28, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Electronic Service List for this case.

By: */s/ Andrew S. Tulumello*
Andrew S. Tulumello