ANDREW S. TULUMELLO (SBN #196484)
drew.tulumello@weil.com
CLAIRE L. CHAPLA (SBN #314255)
claire.chapla@weil.com
WEIL, GOTSHAL & MANGES LLP
2001 M Street NW, Suite 600
Washington, DC 20036
Tel: 202 682 7000
Fax: 202 857 0940

*Attorneys for Defendant PepsiCo, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GUMNER, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PEPSICO, INC.,<br><br>Defendant. | Case No. 8:23-CV-00332-CJC-KES<br><br>**PEPSICO, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**<u>Hearing</u>**<br>Date: August 7, 2023<br>Time: 1:30 p.m.<br>Courtroom: 9B<br>Judge: Cormac J. Carney |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO THE COURT AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 7, 2023 at 1:30 p.m. or as soon thereafter as the matter may be heard by the Honorable Cormac J. Carney in Courtroom 9B, located at 411 West Fourth Street, Santa Ana, CA, 92701-4516, Defendant PepsiCo, Inc. ("PepsiCo") will and hereby does move this Court pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure, for an order dismissing all of Plaintiff's claims against PepsiCo, with prejudice.

PepsiCo brings this motion on the grounds that Plaintiff's claims are preempted by federal law and Plaintiff fails state a claim for which relief can be granted. *First*, Plaintiff does not plausibly allege that the labeling of PepsiCo's Gatorade Fit sports hydration beverage violates governing law. Plaintiff alleges that Gatorade Fit is mislabeled as "healthy" because it does not comply with a federal policy governing fortification of food and beverage products with added vitamins. But the facts pled in the First Amended Complaint (ECF No. 22, "FAC") do not support the assertion that fortification of Gatorade Fit with vitamins A and C is unlawful. To the contrary, the FAC acknowledges that fortification is permitted to correct a dietary insufficiency, and no facts alleged in the FAC dispute that the scientific community has recognized a dietary insufficiency of vitamins A and C. Plaintiff's claims for violation of the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL") and for common-law unjust enrichment are inconsistent with the federal fortification policy and must therefore be dismissed as preempted and inadequately pled. *Second*, Plaintiff does not plausibly allege that any of the allegedly unlawful labeling caused him injury, so his UCL claim further fails for lack of statutory standing. *Third*, Plaintiff seeks purely equitable relief but does not plausibly allege that he lacks an adequate remedy at law.

This motion is based upon this Notice of Motion and the attached Memorandum of Law, the accompanying Request for Judicial Notice, and on such other written and oral

arguments as may be presented to the Court.   This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on June 8, 2023.

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

    A.    Factual Allegations.................................................................................2

    B.    Regulatory Framework..........................................................................3

LEGAL STANDARD............................................................................................5

ARGUMENT ........................................................................................................5

I.    Plaintiff Does Not Plausibly Allege that Gatorade Fit Is Misbranded............5

    A.    FDA's fortification policy permits fortification to correct a "dietary insufficiency" of vitamins A or C ...........................................6

    B.    Plaintiff's state-law claims are preempted because they would impose standards more stringent than FDA's fortification policy........9

    C.    Plaintiff does not plausibly allege that Gatorade Fit's labeling is "unlawful" or "unfair"..............................................................12

    D.    Plaintiff's unjust enrichment claim based on the same alleged conduct must be dismissed...................................................14

II.    Plaintiff Does Not Plead that Reliance on Any Alleged Misstatement Caused His Alleged Injury ...............................................................15

III.    Plaintiff Cannot Seek Equitable Relief Because He Does Not Lack an Adequate Remedy at Law .......................................................17

CONCLUSION...................................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Cole Haan, LLC*,
   No. 20-cv-913, 2020 WL 5648605 (C.D. Cal. Sept. 3, 2020)...................................18

*Alamilla v. Hain Celestial Grp., Inc.*,
   30 F. Supp. 3d 943 (N.D. Cal. 2014)........................................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).................................................................5, 12

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................5, 9

*Brazil v. Dole Packaged Foods, LLC*,
   660 F. App'x 531 (9th Cir. 2016)...............................................18

*Brooks v. PADI Worldwide Corp.*,
   414 F. Supp. 3d 1271 (C.D. Cal. 2019)...........................................9

*Buckman v. Plfs. Legal Comm.*,
   531 U.S. 341 (2001)...............................................................6

*Chong v. Nestle Waters N. Am., Inc.*,
   No. CV-19-10901-DMG-KSX, 2020 WL 7690175
   (C.D. Cal. Nov. 30, 2022).......................................................14

*Clevenger v. Welch Foods Inc.*,
   No. CV-20-01859-CJC-JDE(x), 2022 WL 18228288
   (C.D. Cal. Dec. 14, 2022)...................................................17, 19

*Cohen v. Ainsworth Pet Nutrition, LLC*,
   No. 2:20-CV-05289-MCS-AS, 2021 WL 8533417
   (C.D. Cal. Jan. 21, 2021).......................................................13

*Crosby v. Nat'l Foreign Trade Council*,
   530 U.S. 363 (2000)..............................................................5

*Digit. Mktg. Advisors v. McCandless Grp., LLC*,
  No. 2:21-cv-06888-AB-GJS, 2022 WL 18216003
  (C.D. Cal. Mar. 28, 2022) ........................................................................... 13

*Drake v. Toyota Motor Corp.*,
  No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125
  (C.D. Cal. Nov. 23, 2020) ........................................................................... 19

*Dvora v. Gen. Mills, Inc.*,
  No. 11-cv-1074-GW, 2011 WL 1897349 (C.D. Cal. May 16, 2011) ........ 3, 10, 11, 12

*Gershfeld v. Teamviewer US, Inc.*,
  No. 21-cv-00058-CJC, 2021 WL 3046775 (C.D. Cal. June 24, 2021) ..................... 15

*Gibson v. Jaguar Land Rover N. Am., LLC*,
  No. CV-20-00769-CJC-GJS(x), 2020 WL 5492990
  (C.D. Cal. Sept. 9, 2020) ........................................................................... 18

*Gomez v. Jelly Belly Candy Co.*,
  No. CV-17-00575-CJC-FFM(x), 2017 WL 2598551
  (C.D. Cal. June 8, 2017) ........................................................................... 16

*Great Pac. Sec. v. Barclays Cap., Inc.*,
  743 F. App'x 780 (9th Cir. 2018) ........................................................................... 15

*Gross v. Vilore Foods Co.*,
  No. 20-CV-0894 DMS (JLB), 2020 WL 6319131
  (S.D. Cal. Oct. 28, 2020) ........................................................................... 11, 12

*Guzman v. Polaris Indus., Inc.*,
  49 F. 4th 1308 (9th Cir. 2022) ........................................................................... 17

*Ibarra v. Pharmagenics LLC*,
  No. CV-23-00116-CJC-ADS(x), 2023 WL 2445397
  (C.D. Cal. Mar. 8, 2023) ........................................................................... 17

*Ivie v. Kraft Foods Glob., Inc.*,
  961 F. Supp. 2d 1033 (N.D. Cal. 2013) ........................................................................... 5

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ........................................................................... 15

*McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund. Inc.*,
  339 F.3d 1087 (9th Cir. 2003) ........................................................................... 18

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
No. 16-cv-1442-PSG, 2017 WL 4676585 (C.D. Cal. Oct. 10, 2017) .............. 6, 10, 12

*In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*,
No. 16-cv-1442-PSG, 2018 WL 1616053 (C.D. Cal. Mar. 8, 2018) ........................ 14

*Pargett v. Wal-Mart Stores, Inc.*,
No. EDCV 19-2157 (JGB) (SPx), 2020 WL 5028317
(C.D. Cal. Apr. 10, 2020) ........................................................................ 13

*Rodriguez v. FCA US LLC*,
No. 8:22-cv-01445-FWS-JDE, 2023 WL 3150075
(C.D. Cal. Mar. 21, 2023) ........................................................................ 18

*Shaeffer v. Califia Farms, LLC*,
44 Cal. App. 5th 1125, 1143 (2020) ........................................................ 15

*Shin v. Campbell Soup Co.*,
No. CV 17-1082-DMG, 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017)..................... 15

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ................................................................... 5

*Silvas v. E*Trade Mortg. Corp.*,
514 F.3d 1001 (9th Cir. 2008) ................................................................... 5

*Smith v. Gen. Mills Sales, Inc.*,
No. 1:22-cv-01529 (N.D. Ill. Mar. 3, 2023), ECF No. 25......................... 16

*Sonner v. Premier Nutrition Corp.*,
971 F.3d 834 (9th Cir. 2020) ................................................................... 17

*Svensrud v. Frito-Lay N. Am., Inc.*,
No. 8:20-cv-0714-JLS-DFM, 2020 WL 8575056
(C.D. Cal. Dec. 21, 2020) ........................................................................ 12

*In re Vioxx Class Cases*,
180 Cal. App. 4th 116 (2009) ................................................................... 18

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F. Supp. 2d 1134 (N.D. Cal. 2013)...................................................... 15

*Zeller v. Optavia, LLC*,
    No. 22-CV-434-DMS-MSB, 2022 WL 17858032
    (S.D. Cal. Dec. 22, 2022) ........................................................................... 18

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ..................................................................... 19

**Statutes**

21 U.S.C. § 337 ................................................................................................ 6

Cal. Health & Safety Code §§ 109875, *et seq.* ............................................... 2

Cal. Health & Safety Code § 110100 .............................................................. 6

**Regulations**

21 C.F.R. § 101.12 ............................................................................................ 7

21 C.F.R. § 101.54 ................................................................................... 4, 5, 14

21 C.F.R. § 101.60 ..................................................................................... 4, 14

21 C.F.R. § 101.65 ....................................................................................... 4, 6

21 C.F.R. § 104.20 ........................................................... 3, 4, 7, 10, 11, 12, 13

**Other Authorities**

Ctrs. for Disease Control & Prevention Div. of Lab. Scis.,
    *Second National Report on Biochemical Indicators of Diet and
    Nutrition in the U.S. Population* (2012) ...................................................... 9

J. Crook, et al., *Insufficient Vitamin C Levels among Adults in the United
    States: Results from the NHANES Surveys, 2003-2006*, 13 Nutrients
    3910 (Nov. 2021),
    https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8625707/ ........................ 8

Food & Drug Admin., Food Labeling: Nutrient Content Claims, General
    Principles, Petitions, Definitions of Terms; Definitions of Nutrient
    Content Claims for the Fat, Fatty Acid, and Cholesterol Content of
    Food, 58 Fed. Reg. 2302 (Jan. 6, 1993) ...................................................... 4

J. Lykkesfeldt, *Vitamin C*, 5 Advances in Nutrition 16 (Jan. 2014),
    https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3884093/ ........................ 8

Nat'l Insts. of Health, *Vitamin A and Carotenoids* (June 15, 2022),
    https://ods.od.nih.gov/factsheets/VitaminA-HealthProfessional/#h5 ......................... 9

Nat'l Insts. of Health, *Vitamin C* (Mar. 22, 2021),
    https://ods.od.nih.gov/factsheets/VitaminC-Consumer............................................... 9

C.A. Reider, et al., *Inadequacy of Immune Health Nutrients: Intakes in US
    Adults, the 2005-2016 NHANE*S. 12 Nutrients 1735 (June 2020),
    https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7352522/....................................... 8

Scientific Report of the 2020 Dietary Guidelines Advisory Committee, Part
    A: Executive Summary at 1; Part D, Chapter 1: Current Intakes of
    Foods, Beverages, and Nutrients,
    https://www.dietaryguidelines.gov/sites/default/files/2020-
    07/PartD_Ch1_CurrIntakes_ first-print.pdf ................................................................ 8

U.S. Food & Drug Admin., *FDA Request Information of Expansion of the
    Rarely Consumed Raw List for Uncommonly Consumed Produce* (Aug.
    6, 2020), https://www.fda.gov/food/cfsan-constituent-updates/fda-
    requests-information-expansion-rarely-consumed-raw-list-
    uncommonly-consumed-produce ............................................................................... 7

1

2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

3
4
5
6
7
8
9
10
11
12
13
14

Gatorade Fit is a sports hydration beverage that supplies 100% of the recommended daily intake of vitamins A and C.  Plaintiff alleges Gatorade Fit is mislabeled as providing "Healthy Real Hydration" because these vitamins have been added to the product. Plaintiff does not dispute that Gatorade Fit contains the nutrients required for a beverage to be labeled "healthy," nor does he allege that he was deceived or misled by the product labeling.  Instead, he takes it upon himself to attempt to enforce nuanced and technical federal regulations governing "healthy" claims and vitamin fortification.  Plaintiff argues that Gatorade Fit technically is misbranded as "healthy" because vitamin A and C deficiencies or diseases are too rare to warrant including these vitamins in Gatorade Fit. But that is a standard of *Plaintiff's own creation*—not FDA's.  In the end, this is a case in search of a technical violation of FDA regulations, but without the facts or the law to actually allege one.

15
16
17
18
19
20
21
22
23
24
25
26
27

FDA permits beverages that comply with the agency's fortification policy to use the term "healthy" on the label.  Under that policy, FDA permits fortification of beverages when scientists have recognized a dietary *insufficiency* of vitamin intake; it has not required evidence of deficiencies, common disease, or any level of prevalence.  The First Amended Complaint ("FAC") does not (and cannot) dispute that the leading dietary research reflects that substantial portions of the U.S. population have insufficient intake of vitamins A and C.  That is all that FDA requires to fortify a beverage like Gatorade Fit. Nevertheless, the FAC contends that Gatorade Fit should be prohibited from being labeled as "healthy" absent more widespread vitamin A and C deficiency or disease.  That may be Plaintiff's preferred rule, but it is not the one FDA has adopted.  The FAC seeks to impose a standard different from federal requirements and is therefore preempted. Likewise, the claim that Gatorade Fit is misbranded is not supported by the actual language of the regulation, so all of Plaintiff's claims fail as inadequately pled.

28

Plaintiff's claims contort the technical requirements Plaintiff purports have been violated and stubbornly insist on imposing a different, more stringent standard for vitamin fortification and use of the term "healthy." But FDA's regulations control, and Plaintiff's attempt at enforcement runs adrift of controlling federal law. He has not alleged facts to support the theory that Gatorade Fit is misbranded, even now on his second attempt. The Court should dismiss the FAC, with prejudice.

## BACKGROUND

### A.    Factual Allegations

Gatorade Fit is an electrolyte hydration sports beverage manufactured by PepsiCo under the well-known Gatorade brand. Gatorade Fit comes in a variety of flavors, including Tropical Mango, Citrus Berry, Watermelon Strawberry, Cherry Lime, and Tangerine Orange. FAC ¶ 12. All flavors include the ingredients watermelon juice concentrate, sea salt, and citric acid, as well as additional vitamins, and supply 100% of the reference daily intake for vitamins A and C. *Id.* ¶ 16.

Plaintiff David Gumner is a California resident who claims that he purchased Gatorade Fit "in or around November of 2022" in Laguna Niguel, California. FAC ¶ 54. Plaintiff identifies four aspects of Gatorade Fit's labeling that he contends are unlawful and render Gatorade Fit "misbranded"—the statements "Healthy Real Hydration," "No Added Sugar," "Excellent Source of Antioxidant Vitamins A & C," and "Excellent Source of Vitamins A & C." *Id*. ¶ 55.

Plaintiff does not allege that any of these statements are untrue or deceptive. Instead, he contends Gatorade Fit is misbranded under California Health and Safety Code §§ 109875, *et seq.* (the "Sherman Law"), which incorporates federal food-labeling regulations into California law. FAC ¶ 22. Specifically, he alleges that "Healthy Real Hydration," coupled with the other statements, violates FDA regulations governing the term "healthy" on product labels because Gatorade Fit is fortified with vitamins but does not comply with FDA's fortification policy. *Id.* ¶¶ 20, 21, 24-27, 38. Plaintiff further

alleges that he "paid more for Gatorade Fit" because of the allegedly unlawful claims "or would only have been willing to pay less" without them. *Id*. ¶ 56. Despite these allegations, Plaintiff does not seek money damages. He seeks only equitable relief (1) under the "unlawful" and "unfair" prongs of California's Unfair Competition Law ("UCL") and (2) for unjust enrichment. *Id*. ¶¶ 57-88.

## B.    Regulatory Framework

Plaintiff's claims arise under a framework of regulations designed to ensure consistency and transparency on food labels nationwide. FDA, through the federal Food, Drug, and Cosmetic Act ("FDCA") and its accompanying regulations, has implemented a "comprehensive scheme" governing food-labeling. *See Dvora v. Gen. Mills, Inc.*, No. 11-cv-1074-GW, 2011 WL 1897349, at *4 (C.D. Cal. May 16, 2011). Plaintiff's allegations implicate several of these federal regulations.

***Fortification Policy.*** FDA has developed guidance for the addition of vitamins and nutrients to foods and beverages. This fortification policy, which is codified in the Code of Federal Regulations, is designed to encourage manufacturers to sensibly use nutrient fortification. *See* 21 C.F.R. § 104.20. The policy observes that nutrient fortification "can be an effective way of maintaining and improving" nutritional quality and identifies four approved circumstances for adding vitamins and nutrients. *Id*. § 104.20(a). One of these approved circumstances authorizes fortification "to correct a dietary insufficiency recognized by the scientific community to exist and known to result in nutritional deficiency disease if: … [s]ufficient information is available to identify the nutritional problem and the affected population groups, and the food is suitable to act as a vehicle for the added nutrients." *Id*. § 104.20(b).[1] The policy also acknowledges that "random fortification of foods" could result in nutrient imbalances and thus disapproves

---

[1] This provision also requires that the food not be the subject of other regulations that "require[], permit[], or prohibit[] nutrient additions." 21 C.F.R. § 104.20(b)(2). Plaintiff does not contend that Gatorade Fit is regulated by any such other provision.

of fortifying certain listed items, such as meat, fish, and candy.  *Id*. § 104.20(a).  The fortification policy is generally non-binding absent a particular regulation requiring compliance with the policy.  *See* Food & Drug Admin., Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms; Definitions of Nutrient Content Claims for the Fat, Fatty Acid, and Cholesterol Content of Food, 58 Fed. Reg. 2302, 2362 (Jan. 6, 1993) (to be codified 21 C.F.R. parts 5 and 101) (RJN Ex. 1) ("[I]t is true that the fortification policy is only a guideline").[2]

*"Healthy" Claims.*  FDA regulations also outline certain requirements for when "healthy" can be used as an "implied nutrient content claim."  21 C.F.R. § 101.65(d)(2). For beverages like Gatorade Fit, a "healthy" claim is authorized on products that are low fat, low in saturated fat, and below certain cholesterol levels.  The beverages must also supply at least ten percent of the reference daily intake ("RDI") of one or more listed nutrients, including vitamins A or C.  *See id.* § 101.65(d)(2)(i)(F).  If a product meets the ten percent requirement only through fortification, it must also comply with the otherwise non-binding FDA fortification policy.  *See id.* § 101.65(d)(iv).

*"Excellent Source" and "No Added Sugar" Claims*.  The FAC also references "Excellent Source of Vitamins A & C" and "No Added Sugar" claims, which are likewise governed by federal regulations.  The claim "excellent source" may be used in reference to a nutrient where a product contains "20 percent or more of the RDI [of that nutrient] per reference amount" consumed.  21 C.F.R. § 101.54(b)(1).  The term "no added sugar" may be used if the product complies with the requirements in 21 C.F.R. § 101.60(c)(2), including that sugars (or ingredients containing added sugars) are not added during processing or packaging.   Neither the "excellent source" nor "no added sugar"

---

[2] As set forth in PepsiCo's contemporaneously-filed Request for Judicial Notice ("RJN"), courts routinely take judicial notice of nonbinding guidance from FDA and the contents of the Federal Register, as they are "matters of public record."

requirements tethers their application to the fortification policy.  *See id.*; 21 C.F.R. § 101.54(b)(1).

## LEGAL STANDARD

The Supremacy Clause of the U.S. Constitution grants Congress the power to preempt state law.  *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).  In the food labeling context, a claim is preempted if it seeks to impose food labeling requirements "not identical to" federal law.  *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1038 (N.D. Cal. 2013).  State-law claims that are preempted by federal law must be dismissed.  *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1008 (9th Cir. 2008).

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim only has facial plausibility when "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 663.  Although the Court must accept well-pleaded factual allegations as true, this tenet is "inapplicable to legal conclusions."  *Id.* at 678.  After stripping away the "conclusory statements," the Court must rely on its "judicial experience and common sense," *id.* at 678-79, to determine whether the remaining factual allegations "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and would justify subjecting the defendant to the costs and burdens of discovery.  Dismissal is also warranted where a complaint lacks a cognizable theory or fails to plead essential facts under that theory.  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

## ARGUMENT

### I.     Plaintiff Does Not Plausibly Allege that Gatorade Fit Is Misbranded

Plaintiff does not allege he was misled by any aspect of Gatorade Fit's labeling. Instead, he seeks to privately enforce the technical provisions of federal regulations

governing nutrient fortification, without ever alleging any deception at all. Although there is no federal private right of action to enforce the FDCA, *Buckman v. Plfs. Legal Comm.*, 531 U.S. 341, 349 n.4 (2001) (citing 21 U.S.C. § 337), Plaintiff alleges that Gatorade Fit is misbranded and "unlawful" under the Sherman Law, a California state law that borrows federal labeling requirements. Cal. Health & Safety Code § 110100. Plaintiff's sole theory is that the phrase "Healthy Real Hydration" is technically unlawful because it uses the term "healthy" when the vitamins in Gatorade Fit were not added in accordance with the fortification policy.

Plaintiff's claims are legally defective because they are based on a misreading of the fortification policy: Plaintiff assumes that the policy requires evidence that vitamin A or C deficiency or disease is common, when the policy actually requires nothing of the sort—only the existence of a recognized dietary insufficiency. Nothing in the FAC suggests that the addition of vitamins to Gatorade Fit violates the *actual* terms of the policy. The Sherman Law permits private plaintiffs to bring claims challenging labeling as inconsistent with federal regulations only where the standards imposed are identical to those under federal law. *See In re Quaker Oats Maple & Brown Sugar Instant Oatmeal Litig.*, No. 16-cv-1442-PSG, 2017 WL 4676585, at *6 (C.D. Cal. Oct. 10, 2017). Plaintiff's claims therefore fail as preempted and inadequately pled.

### A.   FDA's fortification policy permits fortification to correct a "dietary insufficiency" of vitamins A or C

Under FDA's regulations governing "healthy" claims, the "Healthy Real Hydration" claim is lawful so long as fortification of Gatorade Fit with vitamin A *or* vitamin C complies with the fortification policy. *See* 21 C.F.R. § 101.65(d)(2)(i)(F). To satisfy the policy, (1) a product must not be one for which FDA discourages fortification, and (2) the nutrients must be added for an appropriate purpose. Both elements are satisfied here.

First, the fortification policy does not preclude fortification of sports beverages like Gatorade Fit.  *See* 21 C.F.R. § 104.20(a) (defining products for which fortification is prohibited).  Gatorade Fit is not a snack food or carbonated beverage.  FDA could have prohibited fortification of sports beverages, but it did not, and Plaintiff does not allege that fortification of such beverages is categorically prohibited.

Second, fortification of Gatorade Fit with vitamins A and C satisfies one of the purposes that the policy expressly approves:  "[T]o correct a dietary insufficiency recognized by the scientific community to exist and known to result in nutritional deficiency disease." 21 C.F.R. § 104.20(b).  Fortifying Gatorade Fit with vitamin A or vitamin C is appropriate because (1) the scientific community recognizes that there is insufficient intake of these vitamins in the United States, and (2) insufficient vitamin A or vitamin C intake can result in a nutritional deficiency disease.

For decades, the scientific community has conducted research on nutrient intake through the National Health and Nutrition Examination Survey ("NHANES"), a bi-yearly cross-sectional study of the U.S. population.  NHANES is conducted by the CDC and frequently relied upon by FDA, which has characterized it as "the most comprehensive dataset available on dietary intake in the U.S."[3]  Relying on NHANES data, the scientific community has recognized a "dietary insufficiency" of both vitamins A and C.  For example, a 2020 analysis of NHANES data published on the National Institutes of Health's (NIH) website, which covers 26,000 adults and spans 12 years, calculates that **45% of the U.S. population has inadequate vitamin A intake and 46% of the U.S.**

---

[3] U.S. Food & Drug Admin., *FDA Requests Information on Expansion of the Rarely Consumed Raw List for Uncommonly Consumed Produce* (Aug. 6, 2020), https://www.fda.gov/food/cfsan-constituent-updates/fda-requests-information-expansion-rarely-consumed-raw-list-uncommonly-consumed-produce (RJN Ex. 2); *see also* 21 C.F.R. § 101.12(b), tbl.1, n.1 (explaining that NHANES is the basis of FDA's reference amounts).

**population has inadequate vitamin C intake**.[4]  It observes that "[v]itamin A deficiency is a global public health problem and increases the risk of infectious diseases," and that the prevalence of vitamin C inadequacy now is higher than in previous NHANES data. *Id.*  Similarly, a 2021 analysis of blood samples from more than 7,000 U.S. study participants collected by NHANES concluded that "**insufficient Vitamin C levels remain a current public health issue**," and are known to cause scurvy, chronic inflammation, and other diseases.[5]  And a report from the 2020 Dietary Guidelines Advisory Committee—tasked by USDA with "providing independent, science-based advice to the Federal government"—states that vitamins A and C are among the "food components [that] are **underconsumed** by all Americans ages 1 year and older" and that "pose special public health challenges."[6]  That report—cited in Plaintiff's original complaint, but excised in the wake of PepsiCo's previous motion to dismiss—also reiterates that "[f]ood components **underconsumed by the entire population include … vitamins A, [and] C**."[7]

---

[4] C.A. Reider, et al., *Inadequacy of Immune Health Nutrients: Intakes in US Adults, the 2005-2016 NHANE*S. 12 Nutrients 1735 (June 2020), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7352522/ (RJN Ex. 3).  Studies published on the NIH website are appropriate subjects of judicial notice.  *See* RJN.

[5] J. Crook, et al*., Insufficient Vitamin C Levels among Adults in the United States: Results from the NHANES Surveys, 2003-2006*, 13 Nutrients 3910 (Nov. 2021), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8625707/ (emphasis added) (RJN Ex. 4); *see also* J. Lykkesfeldt, *Vitamin C*, 5 Advances in Nutrition 16 (Jan. 2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3884093/ (vitamin C deficiency may "increase the risk of cardiovascular and all-cause mortality") (RJN Ex. 5).

[6] Scientific Report of the 2020 Dietary Guidelines Advisory Committee, Part A: Executive Summary at 1; Part D, Chapter 1:  Current Intakes of Foods, Beverages, and Nutrients at 62, 68, https://www.dietaryguidelines.gov/sites/default/files/2020-07/PartD_Ch1_CurrIntakes_ first-print.pdf (emphasis added) (RJN Ex. 6).

[7] *Id.* (emphasis added).

These sources refute Plaintiff's allegations, even at the pleading stage.  They are all judicially noticeable materials available on government and other publically accessible websites whose authenticity cannot reasonably be questioned.  *See* RJN; *Brooks v. PADI Worldwide Corp.*, 414 F. Supp. 3d 1271, 1273-74 (C.D. Cal. 2019) (in ruling on a motion to dismiss, courts may take judicial notice of "matters of public record" and documents that are "not physically attached to the complaint" but whose "authenticity … is not contested") (citations omitted).  Moreover, they are *consistent* with the sources cited in the FAC, which confirm that insufficient levels of vitamins A and C can lead to disease, including scurvy and anemia,[8] and that "certain groups of people are more likely than others to have trouble getting enough vitamin C."[9]

Because the scientific community has recognized insufficient vitamin A and C intake and that insufficient levels of these vitamins can lead to disease, the fortification policy by its terms authorizes the addition of vitamins A and C to Gatorade Fit.

**B.    Plaintiff's state-law claims are preempted because they would impose standards more stringent than FDA's fortification policy**

Because the FAC contains no allegations disputing that (1) scientists have recognized the existence of a dietary insufficiency of vitamins A and C, and (2) this insufficiency can lead to disease, it does not and cannot allege a violation of federal law.

---

[8] *See* Ctrs. for Disease Control & Prevention Div. of Lab. Scis., *Second National Report on Biochemical Indicators of Diet and Nutrition in the U.S. Population*, at 72 (2012) (RJN Ex. 7) (cited at FAC ¶ 44 n.9) (vitamin C deficiency can lead to scurvy); NIH, *Vitamin A and Carotenoids* (June 15, 2022), https://ods.od.nih.gov/factsheets/VitaminA-HealthProfessional/#h5 (RJN Ex. 8) (cited at FAC ¶ 43 n.8) (vitamin A deficiency can lead to anemia).  The Court may rely on these sources because they are quoted and cited in the FAC.  *See Twombly*, 550 U.S. at 568 n.13.  PepsiCo has provided the Court complete copies as RJN Exs. 7 and 8.

[9] NIH, *Vitamin C* (March 22, 2021), https://ods.od.nih.gov/factsheets/VitaminC-Consumer (RJN Ex. 9) (cited at FAC ¶ 45 nn.10-11).  *See also* RJN Ex. 7 at 73-74 (cited at FAC ¶¶ 40 n.5 & 44 n.9) (recognizing that certain subgroups have increased risk for vitamin C deficiencies, including those exposed to secondhand smoke and low-income individuals).

Instead, through his state-law claims, Plaintiff seeks to hold PepsiCo to a standard *more stringent* than federal law.  This forecloses Plaintiff's claims because, under the FDCA's express preemption provision, state-law claims that would result in labeling requirements "not identical to the requirement of relevant federal regulations" are preempted.  *See In re Quaker Oats*, 2017 WL 4676585, at *4.

Plaintiff contends in the FAC that vitamin A and C deficiency and disease is rare in the United States.  FAC ¶¶ 39-46, 49.  This is not the standard in the fortification policy, which does not turn on the frequency or prevalence of vitamin deficiency or disease.  *See* Section I.A, *supra*.  Plaintiff's standard is more stringent than FDA's in two ways.  First, although the FAC appears to conflate the terms, a vitamin "deficiency" is not the same as "insufficiency."  "[I]nsufficiencies" include "*not only* deficiency but hypovitaminosis and inadequate plasma levels."  *See* RJN Ex. 4 (recognizing that 6.1% of people in sample had vitamin C deficiency, 9.5% had vitamin C hypovitaminosis, and 26.2% had inadequate intake).  And a known "dietary insufficiency" is all that the fortification policy requires.  21 C.F.R. § 104.20(b).  Second, nothing in the fortification policy sets forth a minimum level of prevalence of insufficiency, deficiency, *or* disease in order to authorize fortification.  *Id.*  Plaintiff does not allege how common he thinks vitamin A or C deficiency must be to warrant fortification, and certainly does not cite any threshold established by FDA.  His generalized allegation that vitamin A or C deficiency is "too rare" to warrant fortification has no basis in the regulation.

Courts routinely reject claims that allege mislabeling under state law when federal regulations are less restrictive, like the claims here.  For example, in *Dvora*, the defendant's cereal was labeled "Blueberry Pomegranate," consistent with FDA's "characterizing flavor" regulations.  2011 WL 1897349, at *4.  The plaintiff alleged the product was mislabeled because it did not state that it "does not actually contain blueberries or pomegranates," even though "FDA regulations would not require" that labeling.  *Id*.  The court held that plaintiff's claim was preempted because it would impose

obligations more restrictive than what FDA regulations permitted. *See id*. at *6. Likewise, in *Gross v. Vilore Foods Co.*, No. 20-CV-0894 DMS (JLB), 2020 WL 6319131 (S.D. Cal. Oct. 28, 2020), the plaintiff alleged that a juice product was mislabeled because it did not identify the specific type of malic acid it contained. The court rejected this demand for more stringent labeling requirements as preempted because FDA regulations require only the ingredients' "common or usual name." *Id*. at *3.

Here, Plaintiff purports to rewrite the fortification policy to require not only a vitamin *deficiency*—instead of an insufficiency—but also one that is sufficiently prevalent in the United States. *See* FAC ¶¶ 39-46 (referring to the provision as "the dietary deficiency rational[e]"). FDA could have designed its fortification policy to require a sufficiently prevalent dietary "deficiency" of vitamins A or C instead of an "insufficiency recognized by the scientific community." FAC ¶¶ 39-49. But it did not. Plaintiff is not entitled to turn to state law to substitute his own contrary judgment for that of FDA or the scientific community—that is the essence of preemption. *See Dvora*, 2011 WL 1897349, at *5-6 (claim preempted where plaintiff sought "to impose limitations" on defendant that were "different from what federal regulations" permit). Because the fortification policy requires only that an insufficiency *exist*—not that it must be particularly common or present at a particular rate—Plaintiff's claims would impose requirements for fortification that are different from and in addition to the requirements of federal regulations and thus are squarely preempted. *See* 21 C.F.R. § 104.20.

The same flaw defeats Plaintiff's alternative theory that Gatorade Fit is not suitable for vitamin A and vitamin C supplementation since deficiencies in those vitamins are rare for "Gatorade Fit's target market of athletes" and "athletes are not a population group affected by vitamin A and vitamin C deficiencies." FAC ¶ 47. Nothing in the fortification policy requires that a dietary insufficiency be recognized in any particular group, or permits fortification only for products aimed at a "target market" experiencing vitamin deficiencies. On its face, the fortification policy merely requires "[s]ufficient

information … to identify the nutritional problem and the affected population groups." 21 C.F.R. § 104.20(b)(1).  Plaintiff's attempt to restrict "affected population groups" to a "target market" would impose different requirements than federal regulations and is therefore preempted.  *See Gross*, 2020 WL 6319131, at *3.  And in any event, Plaintiff's general allegations about athletes not experiencing these deficiencies are entirely unsupported, conclusory, and not entitled to a presumption of truth.  *See Iqbal*, 556 U.S. at 663.

Because Plaintiff has not plausibly alleged that Gatorade Fit's labeling violates federal law, holding that Gatorade Fit is misbranded under California's Sherman Law would impose labeling requirements that are not required under the federal regulatory scheme.  As a result, Plaintiff's claims are preempted and must be dismissed.  *See In re Quaker Oats*, 2017 WL 4676585, at *6; *Dvora*, 2011 WL 1897349, at *5-6.

### C.    Plaintiff does not plausibly allege that Gatorade Fit's labeling is "unlawful" or "unfair"

Preemption ends the case.  But even if it did not, Plaintiff's UCL claim still must be dismissed for failure to state a claim because he has not plausibly alleged "unlawful" or "unfair" conduct.  *Svensrud v. Frito-Lay N. Am., Inc.*, No. 8:20-cv-00714-JLS-DFM, 2020 WL 8575056, at *4 (C.D. Cal. Dec. 21, 2020).

Plaintiff does not allege that he has been misled or deceived by the "Healthy Real Hydration" labeling.  He bases his "unlawful" claim solely on Gatorade Fit's alleged technical failure to comply with FDA's fortification policy (FAC ¶¶ 24-53, 73), yet he has not plausibly pled that the policy has been violated.  *See* Section I.A, *supra*.  Plaintiff's allegation that Gatorade Fit does not comply with the fortification policy is based entirely on his assertion that vitamin A and C deficiency and disease are rare.  As set forth above, these allegations are irrelevant to Gatorade Fit's compliance with the *actual* terms of the regulation.

But even if Plaintiff's allegations about the prevalence of vitamin A or C deficiency could be read as aiming to allege that Gatorade Fit does not seek to "correct a dietary insufficiency" (21 C.F.R. § 104.20(b)), his own allegations do not support a plausible claim. The Court need not accept the truth of Plaintiff's conclusory assertions when the underlying sources cited in the FAC "fail to support [that] cornerstone conclusion." *Cohen v. Ainsworth Pet Nutrition, LLC*, No. 2:20-CV-05289-MCS-AS, 2021 WL 8533417, at *3 (C.D. Cal. Jan. 21, 2021). Plaintiff's own sources concede that vitamin A or C deficiency can lead to disease and that these vitamins are under-consumed. *See* RJN Exs. 7-9. Claims contradicted by a plaintiff's own sources must be dismissed. *See Cohen*, 2021 WL 8533417, at *2-3 (dismissing claims with prejudice where the cited scientific publications failed to substantiate the amended complaint's allegations); *Alamilla v. Hain Celestial Grp., Inc.*, 30 F. Supp. 3d 943, 944 (N.D. Cal. 2014) (dismissing complaint where articles incorporated by reference "contradict[ed] the allegation upon which [plaintiff's] entire complaint hinges"); *Digit. Mktg. Advisors v. McCandless Grp., LLC*, No. 2:21-cv-06888-AB-GJS, 2022 WL 18216003, at *3 (C.D. Cal. Mar. 28, 2022) (similar). That standard requires dismissal here.

Dismissal is also warranted for another reason: Even if Plaintiff's allegations can be construed as alleging that there is no dietary insufficiency for vitamins A or C, these allegations are flatly contradicted by a host of judicially noticeable materials. Claims under the UCL cannot avoid dismissal when the allegations are "internally inconsistent and directly contradicted by judicially-noticed facts." *Pargett v. Wal-Mart Stores, Inc.*, No. EDCV 19-2157 (JGB) (SPx), 2020 WL 5028317, at *4-5 (C.D. Cal. Apr. 10, 2020). Government-published research studies unambiguously establish that there are groups of people who have insufficient intake of vitamins A and C, and Plaintiff has no basis to rebut these authoritative sources. *See* Section I.A, *supra*. Indeed, *even if* fortification was only permitted to address a "deficiency" as Plaintiff suggests (despite the contrary language in FDA's fortification policy, *see* Section I.A, *supra*), Plaintiff *still* has not

plausibly alleged a violation of the policy.  Recent health survey data shows that there are percentages of the U.S. population—which represent millions of individuals on a population-wide basis—who have *deficient* levels of vitamin C.  *See, e.g.*, RJN Ex. 4.

Plaintiff cannot state a plausible "unlawful" claim when his alleged facts are squarely refuted by not only his own cited sources, but also authoritative, judicially noticeable research.  And because Plaintiff's claim under the "unfair" prong of the UCL is based on the same allegedly unlawful labeling (FAC ¶¶ 74-81), it fails along with the "unlawful" claim.  *See Chong v. Nestlé Waters N. Am., Inc.*, No. CV-19-10901-DMG (KSx), 2020 WL 7690175, at * 9 (C.D. Cal. Nov. 30, 2020) (dismissing "unfair" UCL claim based on same rejected mislabeling theory as "unlawful" UCL claim), *aff'd*, No. 20-56373, 2021 WL 4938128 (9th Cir. Oct. 22, 2021).

To the extent Plaintiff bases his UCL claim on Gatorade Fit's "No Added Sugar" or "Excellent Source of Vitamins A & C" labeling, he has not alleged that labeling is "unlawful" or "unfair" either.  The FAC does not allege that Gatorade Fit is impermissibly labeled as "excellent sources" of vitamin A and vitamin C, or that it contains added sugars.  And the fortification policy is irrelevant to these claims because the regulations governing "excellent source" and "no added sugar" labeling do not require compliance with the fortification policy.  *See* 21 C.F.R. §§ 101.54, 101.60.  Plaintiff's failure to plausibly allege that Gatorade Fit's labeling is unlawful or unfair means his UCL claim must be dismissed.

### D.   Plaintiff's unjust enrichment claim based on the same alleged conduct must be dismissed

Plaintiff's unjust enrichment claim is based on the same insufficient allegations underlying the UCL claim and should be dismissed for this reason alone.  FAC ¶¶ 82-88; *see also In re Quaker Oats*, No. 16-cv-1442 PSG (MRWx), 2018 WL 1616053, at *4 (C.D. Cal. Mar. 8, 2018) ("Because Plaintiffs have not stated viable underlying claims, there is no foundation upon which to base the remaining cause of action for unjust

enrichment.").  Additionally, this Court, along with "many" others in this District, does not recognize unjust enrichment as a "separate cause of action in California," which independently requires dismissal of Plaintiff's claim.  *Gershfeld v. Teamviewer US, Inc.*, No. 21-cv-00058-CJC, 2021 WL 3046775, at *3 (C.D. Cal. June 24, 2021) (Carney, J.) (collecting cases), *aff'd*, No. 21-55753, 2023 WL 334015 (9th Cir. Jan. 20, 2023).

*       *       *

Plaintiff has failed to plead the fundamental premise underlying all of his claims— that Gatorade Fit's labeling violates the actual terms of federal law.  The Court need go no further to dismiss the FAC as preempted or for failure to state a claim.

## II.  Plaintiff Does Not Plead that Reliance on Any Alleged Misstatement Caused His Alleged Injury

Plaintiff's UCL claim independently fails because the FAC does not satisfy the UCL's standing requirements.  A plaintiff cannot sue under the UCL unless he can "plead and prove actual reliance on the misrepresentations or omissions at issue."  *Great Pac. Sec. v. Barclays Cap., Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (citing *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326–27 (2011)).  Plaintiff has not done so here.

As the California Court of Appeal has explained, pleading reliance requires a plaintiff to "truthfully allege" that he "would not have bought the product but for the allegedly actionable misrepresentation."  *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1143 (2020) (citation and internal quotations omitted); *see also Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1145 (N.D. Cal. 2013) (the UCL requires "plaintiffs to have suffered economic injury 'as a result of' the unfair competition they allege").  And allegations of reliance must be plausible:  UCL claims based on "conclusory" allegations that the plaintiff "read and relied on the misleading label," without additional facts are insufficient and must be dismissed.  *Shin v. Campbell Soup Co.*, No. CV 17-1082-DMG (JCx), 2017 WL 3534991, at *6 (C.D. Cal. Aug. 9, 2017).

Plaintiff's allegations are wholly conclusory.  Plaintiff merely alleges that "[p]rior to purchasing Gatorade Fit," he was "exposed to, read, and relied upon the Misbranded

Claims." FAC ¶ 55. He does not allege that he expected a "healthy" product, one without added sugar, or an "excellent source" of vitamins, but did not receive it—much less that these representations even impacted his purchasing decision. Nor does he allege he would not have bought Gatorade Fit but for any of these statements. Plaintiff cannot rely on "cursory, formulaic" recitations devoid of any "factual allegations concerning the circumstances" of his alleged purchase to state a plausible claim for relief. *Gomez v. Jelly Belly Candy Co.*, No. CV-17-00575-CJC (FFMx), 2017 WL 2598551, at \*2 (C.D. Cal. June 8, 2017) (Carney, J.).

Plaintiff's allegations are similar to the allegations this Court rejected in *Gomez*. There, the plaintiff claimed she was misled by "evaporated cane juice" labeling on jelly beans and did not understand that this ingredient was actually sugar. *See id*. In dismissing the complaint, this Court observed that the complaint did not plead reliance because it contained no factual allegations about the circumstances of the plaintiff's purchase, whether she "in fact expected a sugar-free product," what she understood "evaporated cane juice" to mean, and whether she consumed the jelly beans. *Id*. Plaintiff's similarly bare-bones assertions here should be dismissed as well.

Plaintiff's alleged reliance is also implausible. He claims Gatorade Fit was misbranded as "healthy" because the required levels of vitamin A or vitamin C came from fortification. But the FAC pleads no facts to suggest that Plaintiff, in making his purchase, believed "Healthy Real Hydration" meant that Gatorade Fit was not fortified with vitamins A or C or that it was fortified to address a certain level of vitamin A or C deficiency in the U.S. It simply is not plausible that Plaintiff would have such a technical understanding of the word "healthy" while he was shopping. "[A]verage consumers are not likely to be aware of the nuances of the FDA's regulations." Order at 11-12, *Smith v. Gen. Mills Sales, Inc.*, No. 1:22-cv-01529 (N.D. Ill. Mar. 3, 2023), ECF No. 25 (dismissing plaintiff's consumer deception claim) (citation omitted). Plaintiff received

exactly the product he expected—a sports beverage with lots of vitamins and no added sugar.  Without plausible allegations of reliance, Plaintiff's UCL claim fails.

**III.    Plaintiff Cannot Seek Equitable Relief Because He Does Not Lack an Adequate Remedy at Law**

In order to state a claim for "equitable restitution for past harm under the UCL," a complaint "must allege that the plaintiff lacks an adequate legal remedy." *Ibarra v. Pharmagenics LLC*, No. CV-23-00116-CJC (ADSx), 2023 WL 2445397, at *4 (C.D. Cal. Mar. 8, 2023) (Carney, J.) (quoting *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020)).  This requires the plaintiff to "allege some facts suggesting that damages are insufficient to make [him] whole." *Id*.  The FAC includes two conclusory allegations that Plaintiff lacks an adequate legal remedy.  Neither is sufficient.

First, Plaintiff contends "there are no legal causes of action on which Plaintiff can rely" because his "claims do not sound in fraud or contract." FAC ¶ 60; *see also id*. ¶ 83. This mischaracterizes the law and Plaintiff's own legal theory, which is that he bought products labeled as "healthy" when in fact they could not be labeled "healthy" under FDA regulations.  Plaintiff does not explain why he could not bring a breach of warranty claim or a claim under §§ 1770(a)(5) and (a)(7) of the California Consumers Legal Remedies Act ("CLRA"), which provides a damages claim against a party that represents that goods have characteristics or qualities that they do not have.  Although those claims would fail for many of the same reasons Plaintiff's UCL claims fail, it makes no difference whether Plaintiff could ultimately prevail.  The CLRA and breach of warranty are available legal vehicles for Plaintiff to pursue his claims.  *See Clevenger v. Welch Foods Inc.*, No. CV-20-01859-CJC (JDEx), 2022 WL 18228288, at *5 (C.D. Cal. Dec. 14, 2022) (Carney, J.) ("despite the plaintiff's UCL and CLRA claims not being perfectly interchangeable … there was still no support for the plaintiff's argument that the CLRA claim did not provide an adequate legal remedy"); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312 (9th Cir. 2022) ("Failure to comply with a remedy at law does not make it inadequate so as to require the district court to exercise its equitable jurisdiction.").  Nor does it matter that

Plaintiff elected to pursue only equitable remedies. What matters is that legal remedies are *available*, not whether Plaintiff "chooses to pursue" them. *McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund. Inc.*, 339 F.3d 1087, 1093 (9th Cir. 2003); *Rodriguez v. FCA US LLC*, No. 8:22-cv-01445-FWS-JDE, 2023 WL 3150075, at *4 (C.D. Cal. Mar. 21, 2023) ("Plaintiff's decision to refrain from asserting an otherwise apparently viable legal remedy" was "still fatal to establishing this court's equitable jurisdiction.").

Second, Plaintiff contends that legal remedies are inadequate because they are "typically limited to the price premium of the challenged claims," whereas restitution "is not limited" to the price premium alone. FAC ¶ 83. That is incorrect. Under California law, "restitution is equal to the difference between what the plaintiff paid and the value she received in return" (i.e., the *price premium*). *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016) (citing *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009)). And even if there were some difference, the argument "that equitable claims provide greater remedy and are easier to prove does not make [them] proper." *Zeller v. Optavia, LLC*, No. 22-CV-434-DMS-MSB, 2022 WL 17858032, at *7 (S.D. Cal. Dec. 22, 2022). Plaintiff also does not explain how damages would not make him whole for the injury he asserts. Plaintiff alleges he was injured because he "*paid more*" for Gatorade Fit than he otherwise would have "or would only have been willing to *pay less*." FAC ¶ 56 (emphases added). These are quintessential (alleged) monetary harms that can be redressed through damages. *See Adams v. Cole Haan, LLC*, No. 20-cv-913 (JVS), 2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020) (holding that "lost money" is "a form of harm for which legal damages does seem to be an adequate remedy"); *Gibson v. Jaguar Land Rover N. Am., LLC*, No. CV-20-00769-CJC (GJSx), 2020 WL 5492990, at *3-4 (C.D. Cal. Sept. 9, 2020) (Carney, J.) (dismissing equitable claims where there was "nothing" to "suggest that monetary damages would not make Plaintiff or the putative class whole").

1
2
3
4
5
6

Because Plaintiff cannot carry his burden of plausibly alleging that damages are insufficient and a legal remedy is unavailable, his UCL claim for restitution should be dismissed without leave to amend. *See Clevenger*, 2022 WL 18228288, at *6. Plaintiff's failure to plead a lack of adequate legal remedies also requires dismissal of his equitable claim for unjust enrichment. *See Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLA, 2020 WL 7040125, at *14 (C.D. Cal. Nov. 23, 2020).

7

## CONCLUSION

8
9
10
11
12
13
14
15
16
17
18
19
20
21

The Court should dismiss the entire FAC, with prejudice. Plaintiff's private enforcement effort has fallen short—he has not pled that Gatorade Fit has been fortified in violation of FDA policy. Instead, his claims seek to impose a new and more stringent standard for fortification of beverages like Gatorade Fit than FDA has elected to impose. But this is not the purview of private plaintiffs bringing state-law claims. Because Plaintiff has not alleged that Gatorade Fit violates FDA's fortification policy, he likewise has not pled that the use of the term "healthy" on Gatorade Fit's labels was improper. Plaintiff's claims are preempted and inadequately pled, and dismissal with prejudice is warranted. Plaintiff has already amended his complaint once to avoid a pleadings challenge; therefore, granting leave for further amendment would be futile because no factual allegations could correct the fundamental legal flaws in Plaintiff's claims. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (holding that dismissal with prejudice was appropriate where "it was clear that the plaintiffs had made their best case and had been found wanting").

22
23
24
25
26
27
28

1

Dated:  June 16, 2023                       Respectfully Submitted,

2

3
                                            */s/ Andrew S. Tulumello*
                                            ANDREW S. TULUMELLO (SBN #196484)
4
                                            drew.tulumello@weil.com
                                            CLAIRE L. CHAPLA (SBN #314255)
5
                                            claire.chapla@weil.com
                                            WEIL, GOTSHAL & MANGES LLP
6
                                            2001 M Street NW, Suite 600
7
                                            Washington, DC 20036
                                            Tel: 202 682 7000
8
                                            Fax: 202 857 0940

9

10                                          *Attorneys for Defendant PepsiCo, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATION OF COMPLIANCE**

The undersigned, counsel of record for PepsiCo, Inc., certifies that this brief contains 6,335 words, which compiles with the word limit of L.R. 11-6.1.

By: */s/ Andrew S. Tulumello*
Andrew S. Tulumello

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the Electronic Service List for this case.

By: */s/ Andrew S. Tulumello*
Andrew S. Tulumello